UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**      'O'

| Case No. | 2:16-cv-00305-CAS(JEMx) | Date | May 16, 2016 |
|---|---|---|---|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT, ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Robert Henning<br>Samuel Brown | Lucien Schmit, III<br>Benjamin Caplan |

**Proceedings:** DEFENDANT'S MOTION TO DISMISS PORTIONS OF PLAINTIFF'S COMPLAINT (Dkt. 38, filed March 17, 2016)

## I. INTRODUCTION

On January 14, 2016, plaintiff Jane Doe, a minor, by and through her parental Guardian *Ad Litem*, John Doe (collectively, "plaintiff"), filed the instant action against defendants: the Los Angeles Unified School District ("LAUSD"); Paul Revere Middle School and Magnet Center ("Paul Revere"); Steven Carnine ("Carnine"), a teacher at Paul Revere; Thomas Iannuci ("Iannucci"), the assistant principal of Paul Revere; Christopher Perdigao ("Perdigao"), the principal of Paul Revere; and Michelle King ("King"), the superintendent of LAUSD (collectively, "defendants"). Dkt. 1. Plaintiff asserts claims against defendants for: (1) Violation of Title VI of the Civil Rights Act, 42 U.S.C. § 2000d—Hostile Racial Educational Environment; (2) Violation of Title VI of the Civil Rights Act, 42 U.S.C. § 2000d—Intentional Discrimination on the Basis of Race; (3) Violation of Title VI of the Civil Rights Act, 42 U.S.C. § 2000d—Intentional Discrimination on the Basis of Race by Failure to Provide Adequate Sensitivity Training; (4) Violation of 42 U.S.C. § 1983—Title VI §602, Disparate Impact; (5) Violation of 42 U.S.C. § 1983—Freedom of Speech; (6) Violation of 42 U.S.C. § 1983—Equal Protection; (7) Violation of 42 U.S.C. § 1983—Equal Protection in the Exercise of Free Speech and Fundamental Right to Education. Dkt. 1. In brief, plaintiff alleges that defendant Carnine, a teacher at plaintiff's former middle school, Paul Revere Middle School, made racially offensive comments to her and that the remaining defendants failed to take adequate steps to protect plaintiff from the hostile educational environment that erupted after she complained about Carnine's comments.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 2:16-cv-00305-CAS(JEMx) | Date | May 16, 2016 |
|---|---|---|---|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT, ET AL. | | |

On March 17, 2016, defendants filed a motion to dismiss portions of plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] Dkt. 38. On April 25, 2016, plaintiff filed an opposition, Dkt. 45, and on May 2, 2016, defendants filed a reply, Dkt. 46. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

**II.    BACKGROUND**

Plaintiff alleges the following facts in her complaint: Plaintiff is a fourteen year old African-American female, who formerly attended Paul Revere Middle School, a charter school within LAUSD. Compl. ¶¶ 3-4. In January of 2015, during the second semester of her 8th grade year, plaintiff was promoted to an honors level History course taught by defendant Carnine. Id. ¶¶ 22-23. On her first day of class, plaintiff entered Carnine's classroom and handed him her transfer slip. Id. ¶ 23. Carnine read the slip, looked at plaintiff, and asked: "Why are you in my class?" Id. Plaintiff explained that her former teacher had recommended that she be promoted to Carnine's honors level course. Id. Carnine then proceeded to look plaintiff from head to toe and said "*you* can sit over there"—placing emphasis on the word "you" and pointing to a seat in the front corner of the classroom several empty seats removed from the other students seated in the classroom at that time. Id. During the entire time plaintiff was a student in Carnine's class, she was the only African-American student in the class. Id. ¶ 24.

On or around January 16, 2015, and the Friday before Martin Luther King Day, Carnine gave a lesson on what he termed "racial tolerance." Id. ¶ 26. As part of this lesson, Carnine handed out questionaires to his students. Id. This questionnaire contained the following prompts: "What races do you feel get stereotyped the most?"; "What do you think of racism today?"; "List some stereotypes." Id. Carnine instructed the students to fill out the questionnaire and then asked volunteers to read their answers aloud. Id. One white student volunteered and provided the following example of a stereotype: "African Americans are judged based upon athletic abilities and considered to be less intelligent or smart." Id. According to plaintiff, at this point Carnine interjected and said "Oh yeah. That is a good example. Black people are judged for not being smart because they are not smart. A lot of them are just athletes." Id. Carnine then provided

---

[1] Defendant Carnine has not joined the instant motion to dismiss. Nonetheless, for simplicity, the Court refers in this order to the moving defendants simply as defendants.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:16-cv-00305-CAS(JEMx) | Date | May 16, 2016 |
|---|---|---|---|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT, ET AL. | | |

his own example of a stereotype: "[I]f I am walking by myself at night, and there are two black guys following behind me, I am immediately going to get scared and think they are going to rob or hurt me." Id. Plaintiff alleges that while Carnine made these comments he stared at plaintiff. Id. Carnine ended the lesson by discussing the, then recent, incident in Ferguson, Missouri, in which a Caucasion police officer, Darren Wilson, shot and killed an African-American man, Michael Brown. Id. ¶ 29. Plaintiff states that Carnine opined, "the guy [Brown] was a thug and got what he deserved." Id. Plaintiff, who was at that time thirteen years old, avers that she felt hurt by Carnine's comments. Id. ¶ 34. Moreover, plaintiff states that at no point during the lesson did Carnine explicitly disavow or condemn any of the stereotypes. Id. ¶ 33.

      According to plaintiff, Carnine's lesson was adapted from an "Anti-Bias Study Guide" published in 2000 by the New York branch of the Anti-Defamation League ("ADL"). Id. ¶ 27. In the ADL version of the lesson plan, teachers are instructed to offer the following examples of stereotypes: "all teenagers shoplift" and "third graders are babies." Id. The ADL version also does not instruct teachers to mention specific races, or to ask students to generate and read aloud common stereotypes of races they are not members of. Id.

      After Carnines' "racial tolerance" lesson was over, several of plaintiff's classmates came up to her to ask if she felt okay about what had happened in class. Id. ¶ 35. Plaintiff returned home that evening in tears and told her parents about the stereotypes she was told were commonly attributed to people like her and her family. Id. ¶ 36. Plaintiff was out sick the following week. Id. ¶ 37. On January 27, 2015, plaintiff's parents attempted to contact Carnine regarding an upcoming test in his class. Id. ¶ 38. Pursuant to a school policy, plaintiff was entitled to a one day extension on assignments for every day she was out sick. Id. Plaintiff's parents left several voice messages for Carnine, whose only reply was a single voice message in which he mistook plaintiff for another student and said nothing about the extension. Id. ¶ 39.

      On January 28, 2015, plaintiff's mother contacted a school administrator, who told plaintiff's mother that she needed to write a note on plaintiff's behalf and that the administrator would personally deliver it to Carnine. Id. Later that day, plaintiff returned to Carnine's classroom. Id. ¶ 40. When plaintiff arrived in Carnine's classroom he approached her holding the note her mother had written. Id. Carnine again asked plaintiff why she was in his class and she responded that she had "switched to honors."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 2:16-cv-00305-CAS(JEMx) | Date | May 16, 2016 |
|---|---|---|---|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT, ET AL. | | |

Id. According to plaintiff, Carnine then threw the note in her face. Id. Carnine then proceeded to address the whole class and stated: "You will not be getting your tests back on time because there are students who felt they needed more time to study so they did not take the test." Id.

Shortly thereafter, Carnine gave a lesson on the Civil War that plaintiff attended. Id. ¶ 45. In the course of this lesson, Carnine used the phrase "n-i-g-g-e-r lover." Id. Carnine explained that this word had been used as a negative term for President Abraham Lincoln. Id. Carnine did not actually speak this phrase, but rather spelled it aloud for the class. Id. Plaintiff contends that this phrase was not contained in any of the teaching materials or lesson plans provided or approved by LAUSD. Id. Nor did it appear in any of the required reading for Carnine's course. Id.

Plaintiff was deeply offended by the use of this phrase and, shortly after the lesson, her parents called school administrators and asked that plaintiff be removed from Carnine's class. Id. ¶¶ 51, 57, 61. Following this incident, defendant Iannucci assured plaintiff's father that her complaints would be investigated. Id. ¶ 61. To this end, Iannucci selected seven students from Carnine's class and asked them to describe anything unusual that had happened in the last two weeks. Id. ¶ 63. Six out of the seven students mentioned Carnine's use of the "N-word." Id. ¶ 64. Iannucci was apparently satisfied by these responses and concluded that Carnine's conduct had been appropriate. Id. ¶ 68.

On March 18, 2015, plaintif filed a lawsuit in Los Angeles Superior Court alleging violations of the Unruh Civil Rights Act based on intentional discrimination by Carnine, Paul Revere, and LAUSD. Id. ¶ 78. Immediately after plaintiff filed her state court action, supervisors at Paul Revere removed Carnine from the classroom and ordered a more in-depth investigation into the propriety of his actions. Id. ¶¶ 79-80. Plaintiff alleges that, in response to her lawsuit, a large group of parents and student began pressuring Paul Revere to reinstate Carnine. Id. ¶ 81. According to plaintiff, these individuals viewed Carnine as the aggrieved party and believed his actions toward plaintiff had been appropriate. Id. Plaintiff further alleges that local parents and students started a Facebook page titled "Save Carnine" and began distributing an online petition demanding that Carnine be reinstated. Id. ¶ 83. Plaintiff alleges that posts on this site questioned her motives, dismissed her allegations, and threatened her safety. Id. Examples of these posts include: "Plaintiff must pay for lying"; plaintiff is "an attention

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    'O'

| Case No. | 2:16-cv-00305-CAS(JEMx) | Date | May 16, 2016 |
|---|---|---|---|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT, ET AL. | | |

whore"; plaintiff should be "home schooled"; "Kids are not being very nice to [plaintiff] at school but who could blame them"; "I hope Carnine countersues the family"; and "suing for emotional distress, I believe that's code for suing for money." Id. Plaintiff alleges that at least one of her teachers posted on this page and encouraged students and parents to pressure Paul Revere to reinstate Carnine. Id. ¶ 86.

In late March, 2015, plaintiff arrived at Paul Revere to find several news vans parked in front of the school. Id. ¶ 87. Plaintiff later learned that the media was there to cover her lawsuit and the public outcry against her. Id. Throughout the day, plaintiff was also accosted by several of her classmates. Id. For example, plaintiff alleges that when she arrived in her fourth-period classroom several of her white classmates were wearing t-shirts that said "Down with the black girl," "I hate [plaintiff]," "We hate [plaintiff]," "[plaintiff] is a bitch," and "Save Carnine." Id. These students also verbally assaulted plaintiff, calling her anorexic, a "bitch", and other expletives. Id. Plaintiff also alleges that during her lunch hour she encountered dozens of white students holding posters that said "Save Carnine," "Down with the black girl," and "Down with [plaintiff]." Id. ¶ 88. Plaintiff contends that these students spent the entire lunch period chanting phrases such as "down with the black girl" and "down with [plaintiff]." Id. Finally, plaintiff alleges that administrators at Paul Revere did nothing to stop these demonstrations despite a school policy expressly prohibiting student demonstrations during instructional periods. Id. ¶¶ 87-90.

Ultimately, Paul Revere Middle School and LAUSD reinstated Carnine as a teacher and he returned to the classroom shortly after he was initially removed. Id. ¶ 108. In or around November 2015, plaintiff dropped her state court action. Id. ¶ 137. Plaintiff filed the instant action in January 2016. Dkt. 1.

Although eligible to attend a public high school within LAUSD, plaintiff states that she does not feel safe doing so and has instead elected to attend a private school for her freshman year. Compl. ¶ 139. Plaintiff alleges that, at present, LAUSD does not provide any mandatory diversity and sensitivity training for its teachers and administrators. Id. ¶¶ 130-31. Plaintiff alleges that, were LAUSD to implement proper training, plaintiff would be able to consider returning to LAUSD. Id. ¶ 107.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-00305-CAS(JEMx) | Date | May 16, 2016 |
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT, ET AL. | | |

## III. LEGAL STANDARD

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.' " Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-00305-CAS(JEMx) | Date | May 16, 2016 |
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT, ET AL. | | |

that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); see Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).

## IV. ANALYSIS

### A. Plaintiff Cannot Maintain her Title VI Claims Against the Individual Defendants

Plaintiff's first three claims are brought under Title VI of the Civil Rights Act and are asserted against all defendants, including the individual defendants Perdigao, Iannucci, and King. Defendants move to dismiss these claims as to the individual defendants. Plaintiff does not oppose this portion of defendants' motion.

Under Title VI "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity *receiving Federal financial assistance*." 42 U.S.C. § 2000d. Courts have generally recognized that individuals may not be held liable for violations of Title VI, because individuals do not receive federal funding. See, e.g., Shotz v. City of Plantation, 344 F.3d 1161, 1169 (11th Cir. 2003) (noting that courts "have generally concluded that individuals may not be held liable for violations of Title VI because it prohibits discrimination only by recipients of federal funding"); Buchanan v. City of Bolivar, 99 F.3d 1352, 1356 (6th Cir. 1996) (rejecting plaintiff's Title VI claim against two individuals because, *inter alia*, the claim was asserted against the individuals "and not against the school, the entity allegedly receiving the financial assistance"); Santos v. Merritt College, 2008 WL 2622792, at *2 (N.D. Cal. Jul. 1, 2008) (allowing Title VI claim to proceed against college only, and not individual defendant) (collecting cases).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:16-cv-00305-CAS(JEMx) | Date | May 16, 2016 |
|---|---|---|---|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT, ET AL. | | |

Accordingly, the Court GRANTS defendant's motion to dismiss plaintiff's first, second, and third claims for relief as to defendants King, Perdigao, and Iannucci.

**B.  Defendants LAUSD and Paul Revere are Immune Under the Eleventh Amendment From Plaintiff's Section 1983 Claims**

In her fourth and sixth claims, plaintiff asserts claims against LAUSD and Paul Revere for violations of 42 U.S.C. § 1983. Defendants move to dismiss these claims on the grounds that, as arms of the state of California, LAUSD and Paul Revere are immune from section 1983 claims pursuant to the Eleventh Amendment. Plaintiff also does not oppose this portion of defendant's motion.

The Ninth Circuit has held that California public school districts are immune under the Eleventh Amendment from section 1983 claims. See Corales v. Bennet, 567 F.3d 554, 573 (9th Cir. 2009) ("The district court correctly determined that school districts in California are immune from § 1983 claims by virtue of Eleventh Amendment immunity."); Belanger v. Madera Unified Sch. Dist., 963 F.2d 248, 254 (9th Cir. 1992) ("The district court correctly . . . determined that the school district was immune to suit under the Eleventh Amendment."). Schools, including charter schools such as defendant Paul Revere, are similarly immune from section 1983 claims. J.C. by and through W.P. v. Cambrian Sch. Dist., 2014 WL 229892, at *5 (N.D. Cal. Jan. 21, 2014) ("California charter schools . . .are entitled to Eleventh Amendment immunity, and claims against defendant charter schools are dismissed on that basis."); Doe ex rel. Kristen D. v. Willis Unified Sch. Dist., 2010 WL 890158, at *7 (N.D. Cal. Mar. 8, 2010) (finding that "charter schools, like school districts, are considered 'arms of the state' " and are, therefore, immune from liability under the Eleventh Amendment).

Accordingly, the Court GRANTS defendants' motion to dismiss plaintiff's fourth and sixth claims as to defendants LAUSD and Paul Revere.

**C.  Plaintiff's Fourth Claim Fails Because Title VI Creates no Private Right of Action for Disparate Treatment**

Plaintiff's fourth claim for relief is also asserted against defendants King, Perdigao, and Iannucci. In this claim, plaintiff seeks relief under section 1983 "based on Defendants' violations of [Title VI's] prohibition on policies that have a disparate impact

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 2:16-cv-00305-CAS(JEMx) | Date | May 16, 2016 |
|---|---|---|---|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT, ET AL. | | |

on the basis of race." Compl. ¶ 172. Defendants' move to dismiss this claim on the grounds that Title VI does not create a private right of action for disparate impact claims.

In <u>Alexander v. Sandoval</u>, 532 U.S. 275 (2001), the Supreme Court held that Title VI does not create a private right of action for disparate impact claims. And, in <u>Save Our Valley v. Sound Transit</u>, 335 F.3d 932 (9th Cir. 2003), the Ninth Circuit concluded that, because the Supreme Court held in <u>Sandoval</u> that Title VI does not provide a private right of action for a disparate impact claim, a plaintiff could not use section 1983 to create one. Accordingly, in light of this precedent, plaintiff cannot bring her disparate impact claim under section 1983.[2] Defendants' motion to dismiss plaintiff's fourth claim as to defendants King, Perdigao, and Iannucci is, therefore, GRANTED.

### D. Plaintiff Can Maintain Claims Based on Defendant Carnine's Lectures

Next, defendants move to dismiss all of plaintiff's claims to the extent they are based on plaintiff's allegations regarding defendant Carnine's lectures and teaching style. Defendants contend that, under Ninth Circuit precedent, the contents of these lectures cannot form the basis of any plausible claim for relief. For the following reasons the Court disagrees.

Defendants rely principally on the Ninth Circuit's decision in <u>Monteiro v. Tempe Union High School District</u>, 158 F.3d 1022 (9th Cir. 1998) (Reinhardt, J.). In that case, an African-American high school student brought suit against her school district asserting claims under section 1983 and Title VI. <u>Id.</u> at 1024. As the basis for her claims, the student alleged that the her school district had intentionally discriminated against her by requiring her to read two classic literary works—the novel *The Adventures of Huckleberry Finn*, by Mark Twain, and the short story *A Rose for Emily*, by William Faulkner—both of which contain repeated use of the N-word. <u>Id.</u> The Ninth Circuit held that the school district's decision to include these works in its high school curriculum, even if they were accused of being racist in whole or in part, could not constitute racial

---

[2] In her opposition, plaintiff states that she does not oppose defendants' motion to dismiss her fourth claim for relief because she "recognizes that the Ninth Circuit has rejected 'Disparate Impact' Title VI claims brought under § 1983, and that holding is binding on this District Court." Opp'n., at 2 n.1. Nonetheless, plaintiff states that she is preserving this issue to raise on appeal.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-00305-CAS(JEMx) | Date | May 16, 2016 |
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT, ET AL. | | |

discrimination. Id. at 1028. The Ninth Circuit reasoned that, were such decisions to give rise to liability, "the threat of future litigation would inevitably lead many school districts to 'buy their peace' by avoiding the use of books or other materials that express messages—or simply use terms—that could be argued to cause harm to a group of students." Id. at 1029. The Ninth Circuit also noted the "broad discretion afforded school boards to establish curricula they believe to be appropriate to the educational needs of their students." Id. at 1026.

Defendants argue that, under the reasoning of Monteiro, plaintiff's objections to Carnine's teaching choices cannot give rise to liability. They contend that, while Monteiro dealt with literary works, there is no discernable reason why it should not apply to any pedagogical materials, including the contents of a teacher's lectures. The Court disagrees.

First, it is not clear that the reasoning of Monteiro was intended to apply to every pedagogical choice made by school districts and teaching professionals. In that case, the student challenged the school districts decision to include certain classic literary works in its formal curriculum. By contrast, here, plaintiff alleges that Carnine's lectures found no basis or approval in the LAUSD curriculum. Rather, Carnine based his racial tolerance lecture on a modified version of a handout from the New York branch of the ADL. Compl. ¶ 27. And, while Carnine used the phrase "n-i-g-g-e-r lover" in his Civil War lecture, plaintiff states that this phrase was not contained in any of the required reading for Carnine's course. Id. ¶ 45. It is not apparent that the Ninth Circuit intended its holding in Monteiro to apply to even off-handed teaching decisions such as these. See also Monteiro, 158 F.3d at 1032 ("We conclude only that allegations that a school required that a book be read, and then refused to remove it from the curriculum, fails to provide the basis for a claim of discrimination under the Equal Protection Clause or Title VI").

Moreover, even if Monteiro does apply in this case, the Ninth Circuit expressly limited its holding in Monteiro by noting that a defendant could still be liable for *implementing* even an appropriate curriculum in a discriminatory or racist manner. See id. ("We do not, of course, suggest that racist actions on the part of teachers implementing a curriculum could not comprise discriminatory conduct"). The Ninth Circuit also emphasized that teachers have a responsibility "to guide students through the difficult process of becoming educated" and "to exercise their authority wisely and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**      'O'

| Case No. | 2:16-cv-00305-CAS(JEMx) | Date | May 16, 2016 |
|---|---|---|---|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT, ET AL. | | |

well, and to be sensitive to the needs and concerns of *all of their students*." Id. (emphasis added). Here, plaintiff alleges that Carnine took significant liberties in modifying the ADL handout on which he based his racial tolerance lecture. Specifically, plaintiff alleges that in the ADL version of the lesson plan *teachers* are instructed to give examples of stereotypes, including such benign stereotypes as "all teenagers shoplift" and "third graders are babies." By contrast, Carnine instructed his *students* to generate and read aloud common stereotypes of races of which they are not members. And, plaintiff alleges that at no point during the lesson did Carnine explicitly disavow or condemn any of the stereotypes. Even assuming *arguendo* that Carnine's decision to give a lecture on racial tolerance based on the ADL's handout was protected from liability under Monteiro, at a minimum plaintiff could still pursue a claim asserting that Carnine *implemented* this lecture in a discriminatory manner. And, the decision to use the "N-Word" in a class with only a single African-American student ignores the Ninth Circuit's instruction that teachers should be "sensitive to the needs and concerns of *all of their students*."

Accordingly, contrary to defendant's assertion, the Ninth Circuit's decision in Monteiro does not preclude plaintiff from bringing claims based on the contents of Carnine's lectures. The Court, therefore, DENIES this portion of defendants' motion to dismiss.

### E. Plaintiff Lacks Standing to Bring her Claims for Prospective Injunctive Relief

In her complaint, plaintiff states that she is seeking prospective injunctive relief, including "annual, mandatory diversity and racial tolerance training of no less than 72 hours for all LAUSD employees." Compl., at 45. Defendants contend that plaintiff lacks standing to sue for injunctive relief. The Court agrees.

The "irreducible constitutional minimum" of standing requires that a plaintiff establish three elements: (1) an injury that is (2) fairly traceable to the defendant's allegedly unlawful conduct and that is (3) likely to be redressed by the requested relief. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). Here, plaintiff alleges that the denial of her statutory and constitutional rights alleged throughout the complaint was caused, at least in part, by LAUSD's failure to implement proper diversity and tolerance training for its teachers and administrators. Accordingly, plaintiff contends that injunctive relief imposing mandatory diversity and tolerance training throughout LAUSD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**         'O'

| Case No. | 2:16-cv-00305-CAS(JEMx) | Date | May 16, 2016 |
|---|---|---|---|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT, ET AL. | | |

is necessary to redress the injury plaintiff has suffered and to prevent it from occurring in the future. However, plaintiff is no longer a student within LAUSD. Plaintiff graudated from Paul Revere in 2015 and now attends a private high school outside of LAUSD. As such, even if the Court were to grant the requested injunctive relief in full, and impose mandatory diversity and tolerance training throughout LAUSD, plaintiff would not be in a position to benefit from that relief. Likewise, even assuming *arguendo* that LAUSD *does* suffer from a district-wide problem related to its lack of diversity and tolerance training, it is unlikely that plaintiff will suffer harm in the future stemming from any such district-wide problem given that she is no longer a student in LAUSD. See also City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983) ("[A]n equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again"). Plaintiff, therefore, lacks standing to seek the injunctive relief she is requesting.

    Plaintiff resists this conclusion. She argues that, while she is still eligible to enroll in an LAUSD school, she is fearful of doing so due to the districts failure to implement mandatory diversity and tolerance training. However, were LAUSD to implement such a training program, plaintiff states that she "would be able to consider returning to LAUSD." Compl. ¶ 107. The Court finds that the potential that plaintiff might return to LAUSD if injunctive relief were granted is simply too speculative to confer standing on plaintiff to seek injunctive relief across the entirety of LAUSD.

    In her opposition, plaintiff relies on two Supreme Court cases—Honig v. Doe, 484 U.S. 305, 318 (1988) and Gratz v. Bollinger, 539 U.S. 244, 262 (2003)—which she contends are analogous to the present case. In Honig a 20 year old, former student with a behavioral disorder brought suit challenging a school expulsion policy. Honig, 484 U.S., at 318. Despite having dropped out of school and no longer living in the school district, the Supreme Court found that the plaintiff had standing to sue because it was at least probable that the plaintiff would try to complete his education and re-enroll in his former school. Id. Similarly, in Gratz v. Bollinger, students brought suit challenging the University of Michigan's consideration of race in its undergraduate admissions decisions. Gratz, 539 U.S. at 251. Despite having matriculated at a different university, the Supreme Court held that the students had standing to challenge the University of Michigan's admissions policy because they remained "able and ready" to apply as transfer students. Id. at 262. However, in Honig, the Supreme Court was persuaded by the fact that the plaintiff had sought for "*seven years . . .* to vindicate his right to an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                                     'O'

| Case No. | 2:16-cv-00305-CAS(JEMx) | Date | May 16, 2016 |
|---|---|---|---|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT, ET AL. | | |

appropriate public education." Honig, 484 U.S., at 318 n.6 (emphasis added); see also id. ("[W]e think it not only counterintuitive but also unreasonable to assume that respondent will forgo the exercise of a right that he has for so long sought to defend."). And, in Gratz, the district court, which had also certified a class under Rule 23, had made a finding of fact that the class representative for the plaintiffs "intend[ed] to transfer to the University of Michigan when defendants cease[d] the use of race as an admissions preference." Gratz, 539 U.S., at 261. By contrast, here plaintiff does not even allege that she *would* return to LAUSD were the Court to grant her requested injunctive relief; rather, she alleges merely that she "would be able to *consider* returning to LAUSD." Compl. ¶ 107 (emphasis added). This is insufficient to confer plaintiff with standing. See also In re ConAgra Foods, Inc., 90 F. Supp. 3d 919, 981 (C.D. Cal. 2015) ("Plaintiffs' equivocal, speculative assertion that they 'may consider' or 'will consider' purchasing Wesson Oils in the future if they are not mislabeled does not satisfy [Article III's requirements].").

Accordingly, the Court finds that plaintiff lacks standing to seek the injunctive relief she has requested. The Court, therefore, GRANTS defendants' motion to dismiss plaintiff's claim for injunctive relief.

    **F.**    **Plaintiff's Seventh Claim Fails Because there is no Fundamental Right to an Education Under the United States Constitution**

In her seventh claim, plaintiff contends that she has a "fundamental right to receive an education" and that defendants, by their conduct, have denied her this right. Compl. ¶ 197. However, the United States Supreme Court has never recognized a fundamental right to an education. Indeed in San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 33-35 (1973), the Supreme Court stated: "Education, of course, is not among the rights afforded explicit protection under our Federal Constitution. Nor do we find any basis for saying it is implicitly so protected."

In her opposition, plaintiff contends that the decision in Rodriguez is "highly problematic" in light of the Supreme Court's recent decision in Obergefell v. Hodges, 135 S. Ct. 2584 (2015). Plaintiff appears to argue that Obergefell signals an increasing willingness by the Supreme Court to recognize fundamental rights not explicitly contained in the text of the Constitution. See, e.g., Obergefell, 135 S. Ct., at 2605-06 ("An individual can invoke a right to constitutional protection when he or she is harmed,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-00305-CAS(JEMx) | Date | May 16, 2016 |
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT, ET AL. | | |

even if the broader public disagrees and even if the legislature refuses to act."). However, Obergefell addressed whether there is a fundamental right to marriage, not education. And, at least at present, the Supreme Court has not recognized a fundamental right to education. See also High Tech Gays v. Defense Indus. Sec. Clearance Office, 909 F.2d 375, 379 (9th Cir. 1990) ("The Supreme Court has made it clear that there is no fundamental right to education, for equal protection purposes."); League of United Latin American Citizens v. Wilson, 908 F. Supp. 755, 785 n. 37 (C.D. Cal. 1995) ("[E]ducation is not a fundamental right").

Accordingly, because the right on which plaintiff bases her seventh claim does not exist, the Court GRANTS defendants' motion as to this claim.

## V. CONCLUSION

In accordance with the foregoing, the Court **GRANTS in part and DENIES in part** defendants' motion to dismiss portions of plaintiff's complaint. With respect to the portions of plaintiff's complaint to which the Court grants defendants' motion, the Court does so **WITHOUT PREJUDICE**. Plaintiff is hereby granted **thirty (30) days** in which to file an amended complaint addressing the deficiencies identified herein. Failure to do so may result in dismissal of plaintiff's claims with prejudice.

IT IS SO ORDERED.

| | 00 | : | 10 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |