UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   **'O'**

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | February 27, 2017 |
|---|---|---|---|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Robert Hennig | Lucien Schmit, III |
| Samuel Brown | Drew Antablin |

**Proceedings:**  CARNINE'S MOTION FOR SUMMARY JUDGMENT (Dkt. 76, Filed December 28, 2016)

LOS ANGELES UNIFIED SCHOOL DISTRICT'S, PAUL REVERE MIDDLE SCHOOL'S, CHRISTOPHER PERDIGAO'S, AND THOMAS IANNUCCI'S MOTION FOR SUMMARY JUDGMENT (Dkt. 78, Filed December 29, 2016)

## I.   INTRODUCTION

On January 14, 2016, plaintiff Jane Doe, a minor, by and through her parental Guardian Ad Litem, John Doe (collectively, "plaintiff"), filed the instant action against defendants: the Los Angeles Unified School District ("LAUSD"); Paul Revere Middle School and Magnet Center ("Paul Revere"); Steven Carnine ("Carnine"), a former teacher at Paul Revere; Thomas Iannucci ("Iannucci"), the assistant principal of Paul Revere; Christopher Perdigao ("Perdigao"), the principal of Paul Revere; and Michelle King ("King"), the superintendent of LAUSD (collectively, "defendants"). Dkt. 1. On March 17, 2016, all of the defendants, with the exception of Carnine, filed a motion to dismiss portions of plaintiff's complaint. Dkt. 38. On May 16, 2016, the Court granted in part and denied in part defendants' motion. Dkt. 47

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      **'O'**

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | February 27, 2017 |
|---|---|---|---|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. | | |

On June 14, 2016, plaintiff filed the operative First Amended Complaint ("FAC").[1] Dkt. 50. In the FAC, plaintiff asserts claims against Paul Revere and LAUSD for: (1) Violation of Title VI of the Civil Rights Act, 42 U.S.C. § 2000d—Hostile Racial Educational Environment; (2) Violation of Title VI of the Civil Rights Act, 42 U.S.C. § 2000d—Intentional Discrimination on the Basis of Race; and (3) Violation of Title VI of the Civil Rights Act, 42 U.S.C. § 2000d—Intentional Discrimination on the Basis of Race by Failure to Provide Adequate Sensitivity Training. Plaintiff also asserts two claims against the individual defendants, Carnine, Perdigao, and Iannucci: (4) Violation of 42 U.S.C. § 1983—Freedom of Speech; and (5) Violation of 42 U.S.C. § 1983—Equal Protection. In brief, plaintiff alleges that Carnine, a teacher at plaintiff's former middle school, Paul Revere, made racially offensive comments to her during class. Plaintiff alleges that the remaining defendants failed to take adequate steps to protect plaintiff from the hostile educational environment that erupted after she complained about Carnine's statements.

On August 8, 2016, the Court granted defendants' motion to dismiss plaintiff's third claim for relief. Dkt. 65.

On December 28, 2016, Carnine filed a motion for summary judgment with respect to the two claims against him. Dkt. 76. On December 29, 2016, LAUSD, Paul Revere, Iannucci, and Perdigao filed a motion for summary judgment on all of plaintiff's claims.[2] Dkt. 78. On January 26, 2017, plaintiff filed an opposition to each motions. Dkts. 83-84. On February 9, 2017, Carnine filed a reply, dkt. 86, as did the LAUSD defendants, dkt. 87. The defendants also filed objections to certain evidence offered by plaintiff in support of her claims. Dkts. 86-4 (Carnine's Objections); 88 (LAUSD Defendants' Objections).

Having carefully considered the parties' arguments, the Court finds and concludes as follows.

---

[1] The FAC no longer lists King as a defendant.

[2] Carnine no longer works for LAUSD and has separate counsel in this action. To the extent that the Court treat's Carnine's motion separately from the motion brought collectively by the other defendants, the Court refers to all of the defendants except Carnine as the "LAUSD defendants."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      **'O'**

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | February 27, 2017 |
|---|---|---|---|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. |

## II.   BACKGROUND

Except where otherwise noted, the following background is undisputed.

Plaintiff is an African American student who was formerly enrolled at Paul Revere Middle School. The events giving rise to plaintiff's claims for relief took place during the second semester of Jane Doe's eighth grade year at Paul Revere.

### A.   Carnine's History Class

At the beginning of the semester in January 2015, Doe was transferred into an Honors History class taught by Carnine.[3] When she first reported to Carnine's class, Doe brought a transfer slip, which she handed to Carnine explaining that she had been promoted into Honors History and was enrolled in his course. Doe claims that, when she first walked into Carnine's class on January 12th, Carnine's mood soured. Doe Decl. ¶ 14. She claims that Carnine had been smiling during a conversation with a Caucasian student, but stopped smiling when he saw her. Id. ¶¶ 13-14. Doe claims that Carnine stared at her silently for five seconds in a way that made her feel inferior before saying "Who are you? Why are you in my class?" Id. ¶ 14. According to Doe, when Doe presented Carnine with her transfer note, Carnine stared at her for several more seconds and said only "you can sit over there," signaling to an open seat at the front corner of the classroom, adjacent to Carnine's desk. Id.

It is undisputed that Carnine identified plaintiff as an African American student; however, the parties dispute the demographic makeup of Carnine's history class. Carnine contends that plaintiff was one of four or five students that he believed to be of African American descent out of the approximately 37 students in his class. Carnine Decl. ¶ 24. Plaintiff claims that the class was primarily made up of Caucasian students, but that a few students were of Persian descent. Doe Decl. ¶ 12. Plaintiff claims that, other than the Persian students, there was only one other student of color, a student of French African descent. Id.

On the first Friday of the semester, January 16th, the Friday before the Martin Luther King holiday, Carnine led a discussion about stereotypes. Carnine distributed a

---

[3] Unless otherwise noted, all dates described herein occurred during 2015.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | February 27, 2017 |
|---|---|---|---|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. | | |

questionnaire to the class wherein he asked students to write down examples of stereotypes.  Carnine then asked if anyone would like to volunteer to read examples of stereotypes they had written.  Carnine recalls several stereotypes being discussed during the class.  During his deposition, Carnine testified that a student said "[a]ll Jewish people are rich," and another said "blacks are good at sports."  Carnine Depo. 84:9-19.  Carnine recalls discussing a stereotype that Hispanic and African American students are "poor and don't perform well," id. 85:23-24, but does not recall all of the stereotypes discussed. Doe recalls a student saying that African Americans are sometimes stereotyped as being athletic and not being smart.  In response, plaintiff remembers Carnine saying "yes, that is a good example . . . most black people are not smart; they're just good athletes."  Doe Depo. 67:2-4.  According to plaintiff, Carnine never said he did not believe in the foregoing stereotypes.  Doe Decl. ¶ 22.

At some point during the discussion, Carnine mentioned Michael Brown.[4] According to Doe, Carnine said that his own view of the situation in Ferguson, Missouri, was that "Michael Brown was a thug who got what he deserved."  Doe Decl. ¶ 21; Doe Depo. 67:20-68:6.  Doe recalls Carnine continuing, "I know that if I see two black people walking behind me at night, I'm immediately going to get scared and think they're either going to hurt me or rob me." Doe Depo. 68:4-6.  Carnine recalls telling the class that "if Dr. Martin Luther King was living today, he would be involved in issues like the Sanford [sic] or Staten Island or Ferguson,"[5] but does not recall specifically what he explained. Carnine Depo 97:3-6.  Doe was very upset by Carnine's comments and relayed them to her parents that evening.  Doe claims that she was worried and scared about returning to Carnine's class.

Plaintiff was sick from January 20th to January 23rd.  Plaintiff returned to school on January 26th and learned that Carnine's class was scheduled to take an exam on January 28th.  On January 28th plaintiff's mother was able to get a note to Carnine asking

---

[4] Referring to the unarmed African American man shot and killed by a police officer in Ferguson, Missouri in August 2014.

[5] It appears that Carnine was referring to the deaths of Trayvon Martin, in Sanford, Florida; Eric Garner, in Staten Island, New York; and Michael Brown, in Ferguson, Missouri.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | February 27, 2017 |
|---|---|---|---|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. | | |

for an extension.  Plaintiff claims that when she came to class on January 28th Carnine stepped in between her and her seat and said in a loud voice, "why are you in my class?"[6] Doe Decl. ¶ 29.  Doe explained that she had been transferred by her former teacher, to which Carnine replied, "Why?  Who was your teacher again?"  Id.  Doe claims that when she answered, Carnine let out an audible sigh and threw the note from her parents directly at her.  Id.  Carnine had written on the note that Doe could take the exam on February 2nd.  After Doe took her seat, she claims Carnine said to the class, "Sorry class, but you will not be getting your test back on time because there are some students who feel like they need more time," at which point Carnine allegedly stared at Doe for several seconds. Id. ¶ 30.[7]

On January 29th, Doe attended Carnine's class again.  The parties dispute what exactly was said during the January 29th class, its tone, and the context in which it occurred.  Doe testified during her deposition that the students were doing "book work" during the class period, in which they would silently work in their textbooks.  Doe Decl. ¶ 33.  According to plaintiff, near the beginning of class:

> [Carnine] said that 'If you want to know why Abraham Lincoln was hated as a president' – he then leaned into me and he said that 'He was an N-I-G-G-E-R lover,' and he said, 'Isn't that right, [Jane Doe]?' And he looked at me, and he said that to me.

Doe Depo. 75:1-9.  Doe further testified that:

> [a]fter that it was – it was dead silence . . . I just wanted to leave the classroom, but I was – I didn't want to get in trouble, and I was just really,

---

[6] It was Doe's seventh day attending Carnine's class.

[7] It is unclear the extent to which this incident is disputed.  Carnine's motion and evidentiary submissions do not dispute plaintiff's account.  In the LAUSD defendants' Statement of Uncontroverted Facts, they claim that Carnine does not recall making any announcement impliedly blaming plaintiff for any delay.  Dkt. 79-1 (citing Carnine Depo. 199:2-24).  However, LAUSD has not offered the deposition transcript page upon which it relies.  Although it does not appear to affect the Court's ruling, the Court will not consider LAUSD's unsupported contention.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      **'O'**

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | February 27, 2017 |
|----------|--------------------------|------|-------------------|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. | | |

really scared . . . Because he was just really close to me and leaned into me .
. . he was really close.  I could smell his breath, and then I was really
nervous.

Id. 78:3-8.  Carnine testified during his deposition that he said:

Excuse the vernacular of that time, because it's an – you know, it's a word
that shouldn't be used, you know, in – except I'm using it to bring out the
anger, the viciousness that the South felt at the defeat of the Civil War.

Carnine Depo. 109:21-25.  Carnine claims he said "there was much hatred of Lincoln and
that much of that hatred stemmed from the fact that he was viewed by many as a (spelling
it out) 'n-i-g-g-e-r lover.'"  Carnine Decl. ¶ 29.  Carnine claims that he did not direct any
comment at plaintiff when he spelled the word and that he did not stare at plaintiff.  Id. ¶
30.

### B.      The School's Investigation and Response to Complaints About Carnine

While Doe was at school on January 29th, her father called Perdigao to report
Carnine's behavior from the previous classes.  Neither party offers evidence of when the
call occurred relative to Doe' class with Carnine that day Plaintiff's father recalls that
when he spoke with Perdigao about the stereotypes class, "Perdigao laughed it off and
said Mr. Carnine was 'old school' and that we should take a meeting with Mr. Carnine to
express our concerns."  John Doe Decl. ¶ 21.

The evening of January 29th, plaintiff told her parents and godmother about what
had happened in her most recent history class.  Plaintiff's father called the school a
second time on that same day and scheduled a meeting for the next morning.  On January
30th, plaintiff, her parents, and her godmother all met with the vice principal, Iannucci;
plaintiff's academic counselor, Joy Kobashi; and Derek Hubbard, an African American
staff member at the school.  During the meeting, Iannucci told plaintiff's family that he
would investigate the concerns they had presented.  Paul Revere staff agreed to transfer
plaintiff to a new Honors History class.  Plaintiff did not return to Carnine's class.

To investigate plaintiff's complaints, Iannucci randomly selected seven students
from Carnine's class, interviewed them, and obtained written statements from them.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**       **'O'**

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | February 27, 2017 |
|---|---|---|---|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. | | |

According to Iannucci, the students corroborated many of the facts relayed by plaintiff about the January 29th class and the January 16th class.[8]  Iannucci planned to meet with Carnine about plaintiff's complaint and Iannucci's subsequent investigation.  In early February 2015, before Iannucci met with Carnine, a student with an Individualized Education Plan ("IEP") in one of Carnine's other classes complained that Carnine made a derogatory statement about IEPs and students who had them.  Iannucci investigated both complaints, in tandem.  Throughout his investigation, Iannucci consulted with District Operations and Staff Relations personnel within the LAUSD administrative offices – specifically Brenda Olortegui, Staff Relations Director at the Educational Service Center, West ("ESC-West").

On February 12th, Iannucci met with Carnine to discuss the complaints.  Iannucci later gave Carnine a written conference memorandum summarizing their discussion.  On or about February 20th, Olortegui prepared and presented a Worksheet for Potential Discipline Discussion to her supervisor and peers in Staff Relations.  The consensus of the Staff Relations meeting was to recommend issuing a Notice of Unsatisfactory Act ("NOUA") to Carnine and suspend him for between five and eight days.  Staff Relations presented its recommendation to Perdigao and Iannucci, who decided to suspend Carnine for eight days.

---

[8] Carnine has offered the students' written statements into evidence as part of a request for judicial notice.  See Dkt. 76-3.  It appears that the students' statements, along with a declaration by Iannucci, were filed in a separate case in state court.  Carnine seeks judicial notice of the substance of the documents filed in Los Angeles County Superior Court Case No. BC576028.  However, there does not appear to be a basis for taking judicial notice of the substance of the documents and considering them for their truth.  The truth of the statements cannot "accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.  Additionally, they appear to be inadmissible hearsay offered for its truth – the students' recollection of events in Carnine's class.  Accordingly, Carnine's request for judicial notice of the students' statements is denied and the Court declines to consider them.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      **'O'**

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | February 27, 2017 |
|----------|--------------------------|------|-------------------|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. | | |

On March 18th, plaintiff filed a complaint in Los Angeles County Superior Court, see Case No. BC576028 ("the State Case"), against defendants alleging a Civil Rights Claim based upon California's Unruh Civil Rights Act, see Cal. Civ. Code §§ 52 et seq.[9]

On March 19th, Perdigao sent a letter to Carnine notifying him that a meeting would be held to discuss Perdigao's "tentative intention to issue" an NOUA and "possible suspension." LAUSD Ex. 204. The meeting with Carnine was scheduled to occur on March 24th.

The State Case garnered immediate press attention. LAUSD staff determined that Carnine should be removed from his classroom and reassigned. Accordingly, on Friday, March 20th, Carnine was reassigned from his classroom to the LAUSD ESC-West office. On the same day, Perdigao sent a revised letter to Carnine notifying him that Perdigao's tentative recommendation was for dismissal and suspension without pay. Over the weekend between March 20th and March 23rd, LAUSD administrators reconsidered their position and determined that the original recommendation of suspension had been correct. Olortegui Decl. ¶ 10. On Monday, March 23rd, protests occurred on school grounds at Paul Revere, discussed in more detail below.

The disciplinary meeting with Carnine occurred on March 25th, at which time Paul Revere administrators served Carnine with the NOUA and a Notice of Suspension for eight days. On March 26th, Carnine appealed his suspension pursuant to the United Teachers Los Angeles Collective Bargaining Agreement and was returned to his classroom.

After Carnine sent notice of his appeal to Olortegui, it was Olortegui's responsibility to schedule an appeal meeting and move the process forward if LAUSD intended to pursue disciplinary action. Olortegui did not schedule an appeal hearing. LAUSD took no further steps to pursue disciplinary action against Carnine. Carnine was neither suspended nor terminated. Carnine's appeal of the suspension was, for practical purposes, the last act in relation to Carnine's discipline and terminated the proceedings. Carnine has since retired from teaching.

---

[9] Plaintiff's complaint in state court was voluntarily dismissed on November 9, 2015.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      **'O'**

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | February 27, 2017 |
|----------|--------------------------|------|-------------------|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. | | |

### C.   The Response to the State Case

In plaintiff's declaration she states that, after January 29th, she did not receive any updates about the process and progress relating to any potential disciplinary action against Carnine. She continued to see him in the school hallways. Doe Decl. ¶ 47. Plaintiff was distressed by her experiences in Carnine's class and suffered from insomnia as well as crying spells. By March 18th, plaintiff and plaintiff's family had heard nothing about possible disciplinary action against Carnine and filed the State Case.

On March 19th, the day after plaintiff filed the State Case, there were news trucks in front of the school and a crowd of parents when plaintiff was dropped off. According to plaintiff, news broke online that she had filed the State Case. Id. ¶ 51. Plaintiff claims that fellow students began to ask her questions about it. Id. Plaintiff further claims, "I was also told by students that I was 'going to pay for this." Id. On March 20th, Carnine was removed from his classroom and temporarily reassigned to ESC-West.

Over the weekend, March 21st and 22nd, news of the State Case spread as well as news of Carnine's reassignment. By the end of the weekend, a "Save Carnine" movement had developed among, primarily, parents and plaintiff's peers. On Sunday, March 22nd, Perdigao became aware that there was a group of people planning to organize in defense of Carnine and against the State Case.

The parties agree that, on March 23rd, there were protests on Paul Revere school grounds relating to plaintiff's State Case. Before school started on March 23rd, a group of at least 50 to 100 people, many of them parents, gathered in front of Paul Revere with signs. When plaintiff arrived at school, cars were honking and people were yelling "Bring Him Back" and "Save Carnine." Doe Decl. ¶ 54. There was also at least one news truck in front of the school.

Plaintiff recalls making her way through the protesters to get to her first class. Plaintiff claims that no administrator or teacher spoke to her or checked on her, but that her peers were asking her lots of questions focused on the State Case. Doe Decl. ¶ 58. The parties contest what transpired over the course of the remainder of the school day on March 23rd. After first period, plaintiff walked through the hallway, where she claims she heard students chanting "down with the black girl" and using profanity. Id. ¶ 59. After plaintiff's second period class she had a 15-minute nutrition break. While she was

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**    **'O'**

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | February 27, 2017 |
|---|---|---|---|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. | | |

walking to her locker she "noticed more and more people holding up signs that not only read . . . 'We want Carnine,' but now I was seeing people with signs and t-shirts reading 'Down with black girl' and '[Jane Doe] is a B.'"[10]  Id. ¶ 61.  Plaintiff claims that students were taping paper to their shirts with derogatory messages about her.  Plaintiff began crying and went with a friend to cry in the bathroom.  Plaintiff claims she "hid" in the bathroom for the remainder of the nutrition period.  Id.  Thereafter, plaintiff walked across the school grounds to physical education class.  While crossing campus, she claims that she observed "more and more kids now chanting and wearing t-shirts saying 'Down with black girl' and '[Jane Doe] is a B.' . . . On the way, I passed at least 5 teachers and staff who witnessed this behavior but who did nothing to stop it."  Id. ¶ 63.  On her way to her fourth period class, plaintiff noticed that the number of students chanting continued to grow and that the chanting became more aggressive.  Id. ¶ 65.  When she arrived at her fourth period class, there was a group of students inside, some of whom had "Down with the black girl" signs and began chanting "We want Carnine."  Id.  According to plaintiff, the students in her classroom quieted down and hid their signs when the teacher entered the room.  Id.

After fourth period, plaintiff had lunch.  At the beginning of lunch, there was no chanting or protesting.  Plaintiff claims that, "[a]s lunch progressed, there was a huge rally of angry students chanting, 'We want Canine,' [sic] 'Jane is a B,' and 'Down with the black girl.'  Mr. Perdigao and Mr. Iannucci were both there.  They saw and heard everything but did not interject or stop them.  They never checked on me."  Id. ¶ 66.  Plaintiff finished her lunch in the bathroom.  Id.  After fifth period, plaintiff was called to the office, where her family picked her up.  Id. ¶ 68.  Plaintiff could hear hundreds of students chanting as she walked to her car.

The parties agree that at an undetermined time during the school day on March 23rd, there was a student walkout and demonstration of approximately 500 students.  A large group of students did not go to class and participated in a sit-in in the quad.  Iannucci Decl. ¶ 14; Perdigao ¶ 11.  The large group of students congregated in the quad initially.  Iannucci announced that students participating in the demonstration would be given detention.  Perdigao claims, "the crowd was noisy and disruptive, we tried to get these students to go back to class, but it became apparent that would not work, so we

---

[10] Plaintiff claims that students were chanting that she was "a 'B- word'."  Doe Decl. ¶ 59.  It is unclear if students' signs said "is a B" or "is a bitch."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | February 27, 2017 |
|---|---|---|---|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. | | |

moved these students into the school auditorium." Perdigao Decl. ¶ 11. Once in the auditorium, school administrators distributed index cards to students to write questions. Administrators answered questions and told students that "their support for Mr. Carnine could not extend to disrespectful or intimidating words or acts directed to any student." Id. After the discussion in the auditorium, most students returned to their classes. A small number remained for a sit-in in the quad. None of the participating students were punished in any way. Students who missed class were marked as absent for extracurricular activities rather than being marked as truant.

The parties dispute the tenor of the protests, what Paul Revere administrators knew or should have known about the protests, and how Paul Revere responded to the protests.[11]

Numerous school staff and teachers have submitted declarations stating that they did not see signs or shirts referring to plaintiff in disparaging language and that they did not hear disparaging chants on March 23rd. See Moreno Decl. ¶¶ 4-10 (plaintiff's homeroom teacher)[12]; Cronin Decl. ¶ 4 (plaintiff's first period teacher)[13]; Edmiston Decl.

---

[11] Plaintiff also argues that there was a "District policy explicitly prohibiting student led protests during instructional periods," which defendants did not enforce. Dkt. 83-1, Contested Issue No. 149. However, having closely reviewed the citations and evidence offered by plaintiff, plaintiff's factual contention appears to be unsupported by the present record. Plaintiff claims that the existence of an explicit policy is supported by the following evidence: LAUSD's Response to RFA No. 22; Exhibit 117; Perdigao Depo. 145:24-147:6 (describing Exhibit 117); Hubbard Depo. 63:23-65:27; 65:8-14; and Coe Depo. 201:14-202:11. However, plaintiff has not offered an LAUSD response to request for admission number 22. See Dkt. 83-19 Ex. 231 (LAUSD responses to other requests for admission). Nor does Exhibit 117 or the cited depositions excerpts describe any District policy prohibiting student protests on school grounds.

[12] The Moreno declaration appears to be incomplete. Both the electronic and paper copies filed with the Court are missing at least one page and paragraphs eleven through sixteen.

[13] The Cronin declaration appears to be incomplete. Both the electronic and paper copies filed with the Court are missing at least one page and paragraphs five through 16.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**    **'O'**

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | February 27, 2017 |
|---|---|---|---|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. | | |

¶¶ 4-14 (plaintiff's second period teacher); Foxson Decl. ¶¶ 4-14 (one of plaintiff's third period teachers); Walker Decl. ¶¶ 4-14 (one of plaintiff's third period teachers); Banner Decl. ¶¶ 4-14 (fourth period teacher); Mabashov Decl. ¶¶ 4-14 (fifth period teacher); Fulling Decl. ¶¶ 4-14 (sixth period teacher). Iannucci states in his declaration that he spent "most of the day" monitoring the protests outside and neither saw nor heard any derogatory messages targeting plaintiff. Iannucci Decl. ¶¶ 15;18.

The parties dispute whether or not a Paul Revere counselor "shadowed" plaintiff during the school day of March 23rd. During her deposition, Kobashi testified that she "shadowed" plaintiff on March 24th. [14] Kobashi later clarified that she does not recall the exact date. Kobashi Depo. 146:1-147:15. The LAUSD defendants argue that it could only have been March 23rd, because it is undisputed that plaintiff was absent from school March 24th to 27th. Kobashi does not recall speaking to plaintiff and does not recall observing anything out of the ordinary while she shadowed plaintiff except that plaintiff left school early. Id. 134:12-138:7.

Plaintiff returned to school on April 7th, after spring break. Paul Revere assigned Edwina Harding to "shadow" plaintiff from the beginning of April until the end of the school year. Plaintiff claims that Harding never spoke to her and, on one occasion, when a student began asking about the State Case, Harding was "nowhere to be found." Doe Decl. ¶ 77. From April 7th, to the end of the school year, no students wore clothing or had signs disparaging plaintiff. Plaintiffs' teachers claim that they did not hear any students make disparaging comments about plaintiff from April 7th, to the end of the school year. Plaintiff claims that other students avoided her for the rest of the year. Plaintiff graduated from Paul Revere at the end of the 2015 school year.

**III.  LEGAL STANDARDS**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential

---

[14] The parties do not describe what is meant by the term "shadowed" in this context.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   **'O'**

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | February 27, 2017 |
|---|---|---|---|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. | | |

elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## IV.   DISCUSSION

### A.   Evidentiary Objections

Carnine and the LAUSD defendants make several similar objections to evidence offered by plaintiff purportedly demonstrating a material issue of disputed fact. Because they affect the Court's analysis, the Court will address two at the outset.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   **'O'**

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | February 27, 2017 |
|---|---|---|---|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. | | |

### 1.   Anonymous Declarations

In support of her opposition to each motion, plaintiff offers three anonymous declarations from purported friends of plaintiff.  See Dkt. 83-3 (cited by plaintiff as "Student No. 1 Decl."); 83-4 ("Student No. 2 Decl."); & 83-5 ("Student No. 3 Decl."). The names and signatures of each declarant appear to have been blacked out, such that neither the Court nor defendants can identify the person offering the declaration. Although plaintiff has been permitted to proceed anonymously in this action, see dkt. 30, the Court can discern no basis for the admission and consideration of anonymous witness declarations.

In rare circumstances, witnesses may testify anonymously; however, "[a]bsent extraordinary circumstances, witnesses do not testify anonymously under our system of laws." Diamond Pleasanton Enter., Inc. v. City of Pleasanton, No. 12-CV-00254-WHO, 2015 WL 74946, at *1 (N.D. Cal. Jan. 5, 2015).  Plaintiff has not sought a protective order to keep juvenile witness names under seal, nor has plaintiff filed any document identifying the signators to these supporting declarations.  28 U.S.C. § 1746 requires that unsworn declarations be signed by the declarant under penalty of perjury.  Without any record whatsoever of a witness's identity or their signature, a declarant cannot be held to their statements under "penalty of perjury."  Indeed, the Court cannot discern whether the declarations are actually signed by any witness because the signature block is redacted. Both Carnine and the LAUSD defendants object to consideration of any portion of the foregoing anonymous declarations.  Those objections are sustained.  The Court declines to consider the anonymous declarations offered in support of plaintiff's opposition.

### 2.   Plaintiff's Supporting Declaration

Carnine and LAUSD also object to Doe's declaration in support of her opposition. According to defendants, Doe's declaration is a "sham declaration," upon which plaintiff cannot rely to demonstrate a material issue of disputed fact.

> [The] sham affidavit rule prevents a party who has been examined at length on deposition from raising an issue of fact simply by submitting an affidavit contradicting his own prior testimony . . . .  But the sham affidavit rule should be applied with caution because it is in tension with the principle that the court is not to make credibility determinations when granting or denying summary judgment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      **'O'**

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | February 27, 2017 |
|---|---|---|---|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. | | |

<u>Yeager v. Bowlin</u>, 693 F.3d 1076, 1080 (9th Cir. 2012) (quotations and citations omitted).

The parties direct the Court to numerous instances in which plaintiff's declaration allegedly contradicts her deposition testimony. Having closely reviewed plaintiff's deposition and her declaration the Court declines to make a finding that plaintiff's declaration is a sham. <u>See</u> <u>Id.</u> (district court must make a factual finding that a factual contradiction is both "clear and unambiguous" and a sham). Most of defendants' objections relate to purported omissions from Doe's deposition testimony rather than unambiguous contradictions. Statements may be deemed a sham if the declarant first testified that they did not remember certain facts but later stated them in a declaration; however, "newly-remembered facts, or new facts . . . should not ordinarily lead to the striking of a declaration as a sham." <u>Id.</u> at 1081. Other statements to which defendants object in plaintiff's declaration are directed at plaintiff's own feelings and observations, about which plaintiff does not appear to have been asked during her deposition. For example, defendants argue that paragraph 44 of plaintiff's declaration contradicts her deposition testimony. In paragraph 44 of her declaration, plaintiff discusses her feelings during the January 30th meeting with Paul Revere staff: "I was still feeling very shook up and many of the emotions I had experienced the previous day in Mr. Carnine's class were still affecting me. I was afraid to talk." However, during her deposition, plaintiff was not asked about, nor did she testify to, her own feelings during the meeting. <u>See</u> Doe Depo. 109:11-109:24 (asking "What is your best recollection as to the general substance of the conversation? . . . what was said generally at this meeting? . . . What did you say during this meeting?"). Paragraph 44 of plaintiff's declaration does not contradict her deposition testimony, let alone warrant a finding that the declaration is a sham. Defendants' other objections similarly fail to demonstrate a material, unambiguous contradiction. In light of the foregoing, the Court does not find that Doe's declaration in opposition to the instant motions is a sham.[15]

---

[15] The LAUSD defendants also argue that the sham affidavit rule "is especially apt in this case, because Plaintiff made earlier wholesale changes to her deposition testimony without any plausible explanation for them." Reply at 3. It appears that plaintiff testified to events transpiring on certain dates (for instance that students chanted "Down with the Black Girl" during the week of April 13th through April 17th) only to correct the dates

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   **'O'**

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | February 27, 2017 |
|---|---|---|---|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. | | |

**B.   Plaintiff's Claims for Violations of Title VI of the Civil Rights Act**

Plaintiff alleges two claims for violations of Title VI of the Civil Rights Act. Plaintiff's first claim is that Paul Revere students subjected her to a racially hostile educational environment from March 2015 to the end of the school year which was facilitated by defendants in retaliation for plaintiff's complaints of racial harassment. FAC ¶ 145. Plaintiff's second claim is that defendants intentionally denied her the benefits of public education on the basis of her race by exposing her to Carnine's class and failing to take remedial action. Id. ¶ 153. Plaintiff's second claim further alleges a "separate theory of liability for intentional denial of the benefit of public education" insofar as defendants intentionally retaliated against plaintiff for making complaints and bringing a lawsuit alleging racial discrimination. Id. ¶ 157.

In pertinent part, Title VI of the Civil Right Act provides that no person:

shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

42 U.S.C. § 2000d.

**1.   Plaintiff's Claim Based Upon a Racially Hostile Educational Environment.**

Since 1994, the Department of Education has interpreted Title VI as requiring recipients of federal funds to appropriately ensure that they do not subject student to a

---

when she had an opportunity to review her deposition for inaccuracies. See Doe Depo. at 40:21-41:5 (Acknowledging that the protests and chants occurred "During the week of March 23-27th"). Plaintiff acknowledges that it is undisputed that the student chants occurred only in March 2015. See Dkt. 83-1 No. 58 ("Undisputed that that the events she claims occurred happened during the week of March 23– 27, 2015. Undisputed that Plaintiff exercised her right to make changes to her transcript to reflect the proper date of the events"). Plaintiff's corrections to her deposition testimony do not appear to contradict plaintiff's declaration. Therefore, they do not support a finding that plaintiff's declaration is a sham.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      **'O'**

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | February 27, 2017 |
|----------|--------------------------|------|-------------------|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. | | |

racially hostile educational environment.   Department of Education regulations provide that:

> A violation of title VI may also be found if a recipient has created or is responsible for a racially hostile environment—i.e., harassing conduct (e.g., physical, verbal, graphic, or written) that is sufficiently severe, pervasive or persistent so as to interfere with or limit the ability of an individual to participate in or benefit from the services, activities or privileges provided by a recipient.  A recipient has subjected an individual to different treatment on the basis of race if it has effectively caused, encouraged, accepted, tolerated or failed to correct a racially hostile environment of which it has actual or constructive notice . . .

> Under this analysis, an alleged harasser need not be an agent or employee of the recipient, because this theory of liability under title VI is premised on a recipient's general duty to provide a nondiscriminatory educational environment.

59 Fed. Reg. at 11448.  To prove a violation of Title VI's prohibition on racially hostile environments, a party must show: (1) the existence of a racially hostile environment, (2) of which a recipient of federal funds had notice and (3) failed to adequately redress. Monteiro v. Tempe Union High Sch. Dist., 158 F.3d 1022, 1033 (9th Cir. 1998) (citing 59 Fed. Reg. at 11448 for the foregoing elements and acknowledging that the Department of Education regulations are entitled to a high degree of deference regarding the meaning of Title VI's language).  Since Monteiro, the Supreme Court has clarified that plaintiff must demonstrate defendant had *actual notice* of the hostile environment and that a school administrator's response to peer-on-peer harassment will be adequate if it is not "clearly unreasonable."  Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 649 (1999) (evaluating a hostile environment claim based upon gender discrimination pursuant to Title IX); see also, Cannon v. Univ. of Chicago, 441 U.S. 677, 694–96, (1979) (Title IX is interpreted and applied in the same way as Title VI).

LAUSD and Paul Revere argue that they are entitled to summary judgment with respect to plaintiff's first claim for relief because there is insufficient evidence of circumstances constituting a racially hostile environment.  The existence of a racially hostile environment is a question of fact that depends upon the severity, pervasiveness,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   **'O'**

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | February 27, 2017 |
|---|---|---|---|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. | | |

and persistence of racial harassment. 59 Fed. Reg. 11448. To determine whether a racially hostile environment exists, a trier of fact must evaluate the totality of the circumstances, including the "identity, number, and relationships of the persons involved;" the alleged victim's age and race; and the educational context. Id. Ultimately, the question is whether racial harassment was "sufficiently severe that it would interfere with the educational program of a reasonable person of the same age and race as the victim." Monteiro, 158 F.3d at 1033. Further:

> an incident that might not be considered extremely harmful to an older student might nevertheless be found severe and harmful to a younger student. For example, verbal harassment of a young child by fellow students that is tolerated or condoned in any way by adult authority figures is likely to have a far greater impact than similar behavior would have on an adult.

59 Fed. Reg. 11448. In early 2015, plaintiff was thirteen years old.

Defendants argue that the harassment plaintiff claims to have experienced on March 23rd, does not rise to the level of a hostile environment. Defendants characterize Doe's experience as a "single event." Mot. at 16. Defendants rely Davis, in which the Supreme Court stated that it is unlikely Congress intended to impose liability for "a single instance of one-on-one peer harassment." Davis, 526 U.S. at 653. The Davis Court concluded that the harassment at issue must be "serious enough to have the systemic effect of denying the victim equal access to an educational program or activity." Id.

Here, plaintiff claims she experienced more than a single instance of one-on-one peer harassment. Plaintiff offers evidence that Paul Revere tolerated racially harassing protests aimed at plaintiff for much of the school day and by as many as 500 middle school students. Plaintiff claims that she was, in effect, forced out of school for approximately a week because she did not feel safe among her peers and Paul Revere staff. LAUSD and Paul Revere offer evidence in stark contrast to plaintiff's testimony and declaration; however, the Court cannot say, as a matter of law, that the March 23rd protests were not sufficiently severe to interfere with the 8th grade education of a thirteen-year-old African American girl. There are numerous disputed facts regarding Paul Revere students' behavior on March 23rd – it is unclear what students yelled, what students wore, what students' signs said, and when any harassment occurred.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      **'O'**

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | February 27, 2017 |
|---|---|---|---|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. | | |

Additionally, the Department of Education has determined that "[i]n some cases, a racially hostile environment requiring appropriate responsive action may result from a single incident that is sufficiently severe." 59 Fed. Reg. 11448. Accordingly, the seriousness of the racial harassment does not provide a basis for granting summary judgment here.

In the alternative, LAUSD and Paul Revere contend that, if a racially hostile environment existed, their response was adequate based upon what they knew. LAUSD and Paul Revere are only liable for students' harassment of plaintiff insofar as plaintiff demonstrates deliberate indifference to said harassment. See Davis, 526 U.S. at 642; Monteiro, 158 F.3d at 1034. School administrators are not required to completely purge schools of peer harassment to avoid liability and "courts should refrain from second-guessing the disciplinary decisions made by school administrators." Id. at 648. A recipient of federal funds is only required to "respond to known peer harassment in a manner that is not clearly unreasonable in light of the known circumstances." Id. "In an appropriate case, there is no reason why courts . . . could not identify a response as not 'clearly unreasonable' as a matter of law." Id. at 649.

In this case, the parties dispute what LAUSD and Paul Revere staff knew and when. Plaintiff claims that she saw numerous Paul Revere staff observe harassment throughout the morning of March 23rd. Plaintiff further claims that Perdigao and Iannucci were present during the lunch protest. Although Paul Revere staff acknowledge observing student protests about Carnine, staff deny having observed any of the racial harassment at issue. For purposes of the instant motions, the Court cannot resolve said factual disputes or weigh the witnesses' credibility. Nor can the Court determine that the response was not clearly unreasonable as a matter of law. If Paul Revere staff stood by while a large group of students with the phrase "Down with the Black Girl" on their shirts and signs chanted "[Jane Doe] is a bitch" or "down with the black girl," in the school cafeteria, halls, and quad, then defendants' response may have been deliberately indifferent to racial harassment. It is undisputed that no students involved in the protest were punished for missing class and disrupting the school day, let alone yelling racially charged attacks at plaintiff (if any occurred). Accordingly, this is not the "appropriate case" where the response was "not 'clearly unreasonable' as a matter of law." Id.

Lastly, LAUSD and Paul Revere argue that no harm occurred from the events of March 23rd. However, plaintiff, a thirteen-year-old girl, missed approximately a week of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | February 27, 2017 |
|---|---|---|---|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. | | |

school, claims she felt isolated from her peers, and claims she felt her middle school's staff had lent support to a racially-motivated attack.  "It does not take an educational psychologist to conclude that . . . being shamed and humiliated on the basis of one's race, and having the school authorities ignore or reject one's complaints would adversely affect a Black child's ability to obtain the same benefit from schooling as her white counterparts." Monteiro, 158 F.3d at 1034.  "This is especially so when we also consider . . . the victim's age." Id.  There is at least a material issue of disputed fact as to whether plaintiff was injured by defendants' alleged deliberate indifference.

LAUSD's and Paul Revere's motion for summary judgment with respect to plaintiff's first claim is **DENIED**.

### 2. Plaintiff's Claims Based Upon Intentional Discrimination

The contours of plaintiff's second claim against LAUSD and Paul Revere warrant some initial discussion.  Contrary to plaintiff's contention, LAUSD and Paul Revere can only be liable for their response to Carnine's conduct, not the conduct itself.  Plaintiff alleges that "LAUSD and Paul Revere intentionally denied her the benefits of public education on the basis of her race *by exposing her* to Carnine's lessons plans [sic] intended to create racial hostility in the classroom."  FAC ¶ 153 (emphasis added).  Plaintiff adds that Carnine was an agent of LAUSD.  Id. ¶ 156.  In light of the foregoing, plaintiff appears to seek to hold the school and LAUSD liable pursuant to a theory of *respondeat superior*.  Such a theory of liability is foreclosed by controlling precedent.

The Supreme Court has expressly rejected school or school district liability for intentional discrimination by a teacher where it is premised upon the teacher's agency relationship with a school and school district.  See Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 285 (1998) (applying respondeat superior principles to intentional discrimination claims would "frustrate the purposes" of Title IX).  Similarly, the Court held in Gebser that a claim could not proceed where it is premised upon a school's constructive notice of discrimination by a teacher.  Id.

> [I]n cases like this one that do not involve official policy of the recipient entity, we hold that a damages remedy will not lie . . . unless an official who at a minimum has authority to address the alleged discrimination and to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      **'O'**

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | February 27, 2017 |
|---|---|---|---|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. | | |

institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond.

Id. at 290.  The party bringing a discrimination claim against a school must demonstrate that the school was deliberately indifferent to discrimination by its teachers.  Id.  "The premise, in other words, is an official decision by the recipient not to remedy the violation . . . Under a lower standard, there would be a risk that the recipient would be liable in damages not for its own official decision but instead for its employees' independent actions."  Id. at 290-91.

It is undisputed that Paul Revere administrators were unaware of concerns regarding plaintiff's experience in Carnine's class until January 29th, plaintiff's last day in Carnine's class.  As discussed in more detail below, there are material issues of disputed fact regarding whether Carnine's conduct was discriminatory.  Paul Revere and LAUSD may only be found liable for Carnine's alleged conduct if they were deliberately indifferent to discrimination.

Similarly, Paul Revere and LAUSD may be liable for racial harassment by plaintiff's peers if they were deliberately indifferent to their students' harassing conduct. In this respect, plaintiff's second claim overlaps, in part, with plaintiff's first claim in which she alleges a racially hostile educational environment.  However, with respect to plaintiff's second claim, plaintiff alleges that LAUSD and Paul Revere tolerated peer harassment because they sought to intentionally retaliate against her based on her race and because of the State Case.  FAC ¶ 157.

Plaintiff alleges that LAUSD and Paul Revere intentionally discriminated against her by failing to take appropriate remedial action against Carnine for alleged discrimination and by failing to appropriately control racially charged peer harassment. Plaintiff alleges that the latter is "a separate theory of liability."  Id.  Defendants, in turn, argue that their remedial response to Carnine's conduct was adequate and, separately, that their remedial response to peer harassment was adequate.  However, plaintiff's second claim for relief is premised upon LAUSD's and Paul Revere's alleged deliberate indifference to interrelated acts of discrimination by teachers and students alike.  Plaintiff claims, for instance, that defendants permitted peer harassment because plaintiff had complained about discrimination by Carnine.  FAC ¶ 157.  Accordingly, each step in defendants' remedial efforts should not be viewed in isolation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**    **'O'**

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | February 27, 2017 |
|---|---|---|---|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. | | |

With the foregoing understanding of plaintiff's second claim for relief, the Court will now proceed to evaluate whether defendants are entitled to summary judgment. Defendants argue that throughout plaintiff's last semester of 8th grade, LAUSD and Paul Revere responded to discriminatory conduct or allegations thereof in ways that were "not clearly unreasonable." Mot. at 20 (describing the response to Carnine's alleged conduct); & 21 (describing the response to alleged peer harassment). However, the undisputed facts do not entitle LAUSD and Paul Revere to summary judgment. Material issues of disputed fact persist regarding whether defendants were deliberately indifferent to racial discrimination against plaintiff. The Court cannot say defendants' remedial measures were not clearly unreasonable, as a matter of law.

As an initial matter, what Carnine said and did in class is disputed and defendants present little evidence of what exactly plaintiff told them had occurred and when. Accordingly, the Court cannot evaluate the administrator's "actual knowledge" of Carnine's behavior at that time. On January 30th, plaintiff was transferred out of Carnine's class. However, Carnine continued to teach throughout all of February while the school investigated the allegations and a separate incident. Iannucci met with Carnine about the allegations; however, neither Paul Revere nor LAUSD took disciplinary action until *after* plaintiff filed the State Case on March 18th. The "consensus recommendation" of LAUSD administrators, as of February 20th, was to suspend Carnine for five to eight days. Dkt. 83-1 No. 36. However, no one took further steps to impose said discipline until March 19th – the day after the State Case was filed. Id. No. 37. With the exception of Carnine's temporary, administrative reassignment to ESC-West, the motivation for which is unclear from the present record, defendants' disciplinary steps had no formal effect upon Carnine because LAUSD officials did not pursue action against him after he sought to appeal.

Defendants contend that "the appeal process after the suspension was not completed, but the reason for that was the overall volume of cases handled by LAUSD Staff Relations and not any doing of Mr. Perdigao, Mr. Iannucci or Mr. Carnine. This was not clearly unreasonable." Mot. at 20. However, plaintiff's second claim is against Paul Revere and LAUSD, not any individual administrators or teachers. To the extent that LAUSD and Paul Revere contend that the volume of disciplinary cases involving teachers excuses their failure to press disciplinary action against Carnine, the Court cannot draw such an inference on a motion for summary judgment. Instead, the Court must draw all reasonable inferences in favor of the party resisting the motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   **'O'**

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | February 27, 2017 |
|---|---|---|---|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. | | |

<u>Matsushita</u>, 475 U.S. at 587. One such inference, in light of the sequence of events, is that defendants initially pursued disciplinary action against Carnine because of media attention resulting from the State Case and then abandoned the effort when public attention subsided. Furthermore, it is unclear to what extent Carnine was being disciplined for his alleged statements about students with IEPs as opposed to the comments at issue here.

The parties offer starkly conflicting accounts of what occurred on March 23rd. Plaintiff offers evidence that the principal and vice principal of Paul Revere had actual knowledge that hundreds of students chanted "Down with the Black Girl" at plaintiff while holding signs and wearing shirts bearing the same message. It is undisputed that no students were disciplined for participation in the March 23rd protests. In light of the foregoing, especially when viewed alongside the delayed and abandoned effort to discipline Carnine, the evidence demonstrates a material issue of disputed fact regarding whether LAUSD and Paul Revere were deliberately indifferent to racial discrimination and intentionally permitted a racially hostile educational environment because of plaintiff's race and complaints.

Defendants' motion for summary judgment with respect to plaintiff's second claim is **DENIED**.

### B.    Plaintiff's Constitutional Claims

Iannucci, Perdigao, and Carnine also seek summary judgment with respect to plaintiff's § 1983 claims for violation of plaintiff's First Amendment right to Freedom of Speech and plaintiff's Fourteenth Amendment Right to Equal Protection.

### 1.    Plaintiff's First Amendment Claim

Plaintiff's fourth claim is that she suffered retaliation for engaging in protected speech. To establish such a claim, plaintiff must establish:

(1) [s]he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | February 27, 2017 |
|----------|--------------------------|------|-------------------|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. | | |

O'Brien v. Welty, 818 F.3d 920, 932 (9th Cir. 2016) (quoting Pinard v. Clatskanie Sch. Dist. 6J, 467 F.3d 755, 770 (9th Cir. 2006)).

       **a.**     **Against Carnine**

It is undisputed that Carnine took no action in retaliation for plaintiff's filing the State Case, dkt. 84-2 no. 15, that Carnine exercised no control over the March 23rd protests, id. no. 9, and that Carnine did not speak to anyone about retaliating in response to the State Case, id. no. 10-11;14. Accordingly, plaintiff's First Amendment retaliation claim against Carnine is limited to her claim that Carnine retaliated against her on January 29th, during her last day in his class.

Plaintiff has a constitutional right to speak with her parents and have them speak freely on her behalf. Cain v. Tigard-Tualatin Sch. Dist. 23J, 262 F. Supp. 2d 1120, 1127 (D. Or. 2003). Relatedly, it is well-established that a student has a protected right, subject to certain exceptions that are not relevant here, to raise complaints about teachers to school and district officials. See e.g. Pinard v. Clatskanie Sch. Dist. 6J, 467 F.3d 755, 771 (9th Cir. 2006) (student complaints to district that basketball coach was "verbally abusive and highly intimidating" are protected by the First Amendment).

Plaintiff offers evidence suggesting that on January 29th, Carnine stopped a silent session of class, leaned in close to plaintiff, said to the class that Abraham Lincoln was hated for being an "n-i-g-g-e-r lover," then looked at plaintiff and said "isn't that right [Jane Doe]?" Doe Depo. 75:1-9. Plaintiff argues that Carnine did so in retaliation for her complaints about Carnine's prior classes.

It is undisputed that plaintiff complained to her father about Carnine's January 16th class before January 29th. On January 29th, during school, plaintiff's father called Perdigao on the telephone and relayed plaintiff's complaints about Carnine's prior classes. Neither party offers evidence of when plaintiff's father first spoke with Perdigao on January 29th. Perdigao does not recall whether he spoke immediately with Carnine about the complaint or whether he spoke with Carnine at all on January 29th about plaintiff's first complaint. See Perdigao Depo. 130:6-9 ("I don't know if I addressed him that day. I don't know. Don't remember"); 196:2-25 ("I don't know if we had the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   **'O'**

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | February 27, 2017 |
|----------|--------------------------|------|-------------------|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. | | |

meeting with Mr. Carnine prior to the second complaint. They were right on top of each other").

Carnine argues that there is no evidence showing that, as of plaintiff's class on January 29th, Carnine had knowledge of plaintiff's initial complaints. Therefore, Carnine contends that he could not have intended to retaliate for said complaints. Carnine cites his own declaration for the proposition that he was unaware of any complaints until after the January 29 class. See Carnine Decl. ¶ 22. In response, plaintiff contends that the timing of Carnine's conduct and the conduct itself are circumstantial evidence of retaliation. Plaintiff argues that Carnine's conduct followed soon after her father's call to the school – circumstantial evidence that Carnine heard about the call. Further, plaintiff contends that the class had not yet had a lesson on the Civil War and Abraham Lincoln, Doe Decl. ¶ 33, such that Carnine's comments may have been out of place. In light of the foregoing, there is a material issue of disputed fact regarding whether Carnine was aware of plaintiff's complaint at the time of his January 29th class and singled out plaintiff for retaliation. Plaintiff's father's phone call to Perdigao, which the parties appear to agree occurred prior to Carnine's class, coupled with Carnine's behavior at the commencement of class would be sufficient evidence for a jury to conclude that Carnine *was* aware of plaintiff's complaint, notwithstanding his own testimony to the contrary.

Next, Carnine argues that a First Amendment retaliation claim cannot rely solely upon retaliatory verbal insults. Carnine relies upon a line of cases which have held that a correctional officers' verbal insults aimed at inmates are insufficient to establish a freestanding violation of an inmate's Due Process rights. See e.g. Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987) (quoting Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979)). However, these cases shed little light on the appropriate standard to apply to a teacher's insults in an Eighth grade classroom where a student brings a First Amendment retaliation claim.

The reasoning of Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989), is somewhat instructive. In Valandingham, an inmate alleged that he had engaged in protected speech (petitioning a court for redress of grievances) and that, as a result, prison officials called him a "snitch" in front of other inmates. Id. at 1138. The court held that his allegations were sufficient to state a claim for First Amendment retaliation and that the district court erred in granting summary judgment in favor of the prison officials. Id. at 1139. The court reasoned that there was a material issue of disputed fact as to whether

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   **'O'**

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | February 27, 2017 |
|---|---|---|---|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. | | |

calling the inmate a "snitch" would cause him "harm" (and therefore chill protected speech).  Id.  The court made no mention of the fact that the officers' retaliation was, in effect, only a verbal insult because, in prison, such a label may carry serious practical consequences.  Id.

Plainly, Valandingham's facts are easily distinguished.  However, if true, the retaliation plaintiff claims may have foreseeable practical consequences for an eighth-grade girl who is a racial minority in her classroom and school.  Carnine's comments may have caused plaintiff immediate psychological harm and may have opened her up to racially charged harassment from peers – which plaintiff claims followed.  Plaintiff presents evidence, albeit disputed, suggesting Carnine made the statements in retaliation for protected speech.  Drawing all reasonable inferences from the evidence in favor of plaintiff, there is a disputed issue of material fact regarding whether Carnine's conduct "would chill a person of ordinary firmness from continuing to engage in the protected [speech]."  O'Brien v. Welty, 818 F.3d at 932.  Accordingly, the Court declines to grant Carnine summary judgment on the basis that his alleged retaliation was *only* verbal.

Lastly, Carnine argues he is entitled to qualified immunity.  Carnine argues that it was (and is) not clearly established that a teacher may not tell his students Lincoln was hated for being a "n-i-g-g-e-r lover."  Mot. at 21-22.  Carnine cites Monteiro, 158 F.3d at 1032, for the proposition that the other students in plaintiff's class have a first amendment right to receive offensive ideas and for the uncontroversial proposition that teachers play an important role as guides to students.  Carnine further argues that he has a First Amendment right to present even offensive ideas to his history class.  Mot. at 21 (citing Monteiro, 158 F.3d at 1030 n. 13 (acknowledging that teachers do not shed their First Amendment rights when they enter school grounds)).

On the present record, Carnine is not entitled to summary judgment because of qualified immunity.  Qualified immunity is a defense to suit where an official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Pearson v. Callahan, 555 U.S. 223, 231 (2009).

Carnine appears to argue that he could not possibly have violated a clearly established statutory or constitutional right where he exercised, in his view, his right to free speech.  However, Carnine offers no authority for his contention that a reasonable teacher would perceive their first amendment rights as protecting against suit for First

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   **'O'**

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | February 27, 2017 |
|---|---|---|---|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. | | |

Amendment retaliation or racial discrimination. In <u>Monteiro</u>, the plaintiff sought to prevent certain books from being taught on the ground that their contents created a racially hostile environment. However, in refusing to ban certain books, the <u>Monteiro</u> court acknowledged:

> We do not, of course, suggest that racist actions on the part of teachers implementing a curriculum could not comprise discriminatory conduct . . . Nor do we preclude the prosecution of actions alleging that schools have pursued policies that serve to promote racist attitudes among their students, or have sought to indoctrinate their young charges with racist concepts . . . It is simply not the role of courts to serve as literary censors or to make judgments as to whether reading particular books does students more harm than good.

<u>Monteiro</u>, 158 F.3d at 1032.

Although defendant characterizes his conduct as merely a lesson about a dark period of American history and the bigoted views held by others, there are material issues of disputed fact as to whether Carnine's conduct was merely an ill-considered teaching-method or intentional retaliation for a student's protected speech. In this case, the Court is not called upon to determine whether Carnine's statements did more harm than good as a lesson on bigotry. The Court is called upon to determine whether Carnine may have violated plaintiff's clearly established rights.

Carnine does not dispute, nor could he, that as of January 29th plaintiff had a clearly established First Amendment right to bring complaints about her teachers to the Principal's attention. <u>See</u> <u>Pinard</u>, 467 F.3d 755. Accordingly, in determining whether Carnine is entitled to qualified immunity, the Court must determine whether the "facts viewed in the light most favorable to the injured party show that [Carnine] violated a constitutional right." <u>See</u> <u>Ford v. City of Yakima</u>, 706 F.3d 1188, 1192 (9th Cir. 2013) (citing <u>Saucier v. Katz</u> 533 U.S. 194, 201 (2001)).

The context in which Carnine brought up the racist epithet and the extent to which he focused attention upon plaintiff specifically are in dispute. As is Carnine's motive for commencing the January 29th class in the way he did. Viewed in the light most

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | February 27, 2017 |
|---|---|---|---|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. | | |

favorable to plaintiff, the evidence suggests Carnine's conduct was in retaliation for plaintiff's protected speech.  Accordingly, Carnine is not entitled to qualified immunity.

Carnine's motion for summary judgment as to plaintiff's fourth claim is **DENIED**.

### b.     Against Iannucci and Perdigao

Plaintiff's First Amendment retaliation claim against Iannucci and Perdigao, in contrast to that against Carnine, is based primarily upon their alleged acquiescence to large-scale, racially charged protests aimed at plaintiff in response to the State Case.  Iannucci and Perdigao argue that they are entitled to summary judgment for two reasons: (1) they took no actions against plaintiff that would chill protected speech and (2) nothing they did was motivated by retaliation.  According to defendants, "[p]resumably Plaintiff's claim against Mr. Perdigao is that he allowed a demonstration to occur in the hope that it would result in harming Plaintiff, but she has no evidence to back that up."  Mot. at 21.  Similarly, defendants argue that Iannucci, "was not responsible for deciding how to deal with protests or demonstrations on March 23rd [and] did not witness the harassment that Plaintiff says occurred."  Id. at 22.

On the contrary, plaintiff offers her own testimony that she saw, at a minimum, Perdigao and Iannucci in the cafeteria on March 23rd, listening and observing while a large group of students chanted "Down with the Black Girl" and "[Jane Doe] is a bitch."  See Doe Depo. 94:15-19 ("Iannucci, he was watching all the students, and he was hearing them chant the things that they said and watching those protests go on and people with the shirts on and saying these things, and he just stood there and didn't do anything"); Doe Decl. ¶ 66 ("After fourth period, I had lunch . . . there was a huge rally of angry students chanting . . . 'Jane is a B,' 'Down with the Black Girl.'  Mr. Perdigao and Mr. Iannucci were both there.  They saw and heard everything but did not interject or stop them").  It is undisputed that none of the students who missed class to participate in the March 23rd protests faced any disciplinary action from Perdigao or Iannucci.

Defendants' argument that they took no affirmative steps to retaliate against plaintiff for filing the State Case is belied by their enormous control and authority over discipline at Paul Revere as principal and assistant principal.  A school administrator's inaction may constitute a deprivation of plaintiff's constitutional rights, where the administrator is deliberately indifferent to peer harassment.  See Flores v. Morgan Hill

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | February 27, 2017 |
| --- | --- | --- | --- |
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. | | |

Unified Sch. Dist., 324 F.3d 1130, 1135 (9th Cir. 2003) (using the "clearly unreasonable" standard to evaluate whether acquiescence to peer harassment could constitute a constitutional violation). Where teachers, in retaliation for protected speech, permit a large crowd of students to chant racially charged insults at a peer without consequence, there can be little doubt that the teachers' conduct may chill protected speech. Defendants dispute whether students actually chanted racially charged insults, let alone in front of Iannucci and Perdigao; however, plaintiff's testimony demonstrates a material issue of disputed fact.

Similarly, whether defendants' indifference to the harassment allegedly suffered by plaintiff was motivated by plaintiff's protected speech presents a material issue of disputed fact. "As with proof of motive in other contexts, this element of a First Amendment retaliation suit may be met with either direct or circumstantial evidence and involves questions of fact that normally should be left for trial." Ulrich v. City & Cnty. of San Francisco, 308 F.3d 968, 979-80 (9th Cir. 2002). Motive may be proven circumstantially, based on the "(1) proximity in time between the protected speech and the alleged retaliation; (2) the [defendants'] expressed opposition to the speech; and (3) other evidence that the reasons proffered . . . were false and pretextual." Id. at 980. Additionally, "[d]epartures from the normal procedural sequence also might afford evidence that improper purposes are playing a role." Village of Arlington Heights v. Metro Hous. Dev. Corp., 429 U.S. 252, 267 (1977).

In this case, plaintiff's protected speech – the complaint in the State Case – was premised upon Carnine's conduct in January 2015 and the school's lack of remedial efforts. Iannucci led the investigation into Carnine's conduct and Perdigao was the principal of Paul Revere. The State Case implicated allegedly poor conduct by both of them. The student-protests followed closely on the heels of plaintiff's filing the State Case and was in direct response to the State Case and media coverage of plaintiff's complaint. If plaintiff's testimony is credited, Iannucci and Perdigao stood by while hundreds of students chanted insults and threats against plaintiff because of the State Case. Thereafter, neither Perdigao nor Iannucci sought disciplinary action against any students despite their alleged chants, shirts, signs, and having missed classes. Despite defendants' testimony to the contrary, the foregoing is sufficient circumstantial evidence to demonstrate a material issue of disputed fact as to whether Iannucci and Perdigao were deliberately indifferent to the student protests because of plaintiff's protected speech.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | February 27, 2017 |
|----------|--------------------------|------|-------------------|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. | | |

In light of the foregoing, Iannucci's and Perdigao's motion for summary judgment regarding plaintiff's fourth claim is **DENIED**.

###     2.     Plaintiff's Equal Protection Claims

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV, § 1.  "To establish a § 1983 equal protection violation, the plaintiff[ ] must show that the defendants, acting under color of state law, discriminated against [her] as [a] member[ ] of an identifiable class and that the discrimination was intentional" or resulted from deliberate indifference.  Flores, 324 F.3d at 1134.  "In the specific context of a school administrator's failure to . . . discipline harassment at school, a defendant acts with deliberate indifference when he or she responds to known harassment in a manner that is clearly unreasonable."  Walsh v. Tehachapi Unified Sch. Dist., 827 F. Supp. 2d 1107, 1116 (E.D. Cal. 2011).  Furthermore, the Supreme Court has held that retaliation for complaints of discrimination is itself intentional discrimination. See Jackson v. Bd. of Educ., 544 U.S. 167, 173-74 (2005) (holding retaliation for complaint of gender discrimination "is discrimination on the basis of sex because it is an intentional response to the nature of the complaint: an allegation of sex discrimination.")

###     a.     Against Carnine

Plaintiff's fifth claim for relief against Carnine is based upon her treatment in Carnine's classroom.

Carnine first argues, as he does with respect to plaintiff's First Amendment claim, that verbal harassment or abuse is not sufficient to state a claim for constitutional deprivation.  Carnine argues that the Court should not consider his verbal statements because they cannot support a constitutional claim and that plaintiff fails to present evidence of other conduct supporting a constitutional claim.  Carnine contends that plaintiff's:

> Fifth Cause of Action [does not] survive[] without that claimed verbal harassment. What else would Plaintiff claim constituted racial

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**         **'O'**

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | February 27, 2017 |
|---|---|---|---|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. | | |

discrimination?  A 'mean' look?  A 'stare'?  Standing too close to her desk in a classroom full of students?

Reply at 14.

The Court rejects Carnine's argument that a teacher's verbal harassment of black students cannot support an Equal Protection claim.  See Lovell v. Comsewogue Sch. Dist., 214 F. Supp. 2d 319, 323 (E.D.N.Y. 2002) ("several courts have held that harassment is a basis for an equal protection claim under Section 1983").  Unlike the inmate litigation upon which Carnine principally relies, plaintiff does not allege that Carnine's language *alone* is a violation of substantive due process or that she has a freestanding right to be free of verbal abuse.  Deliberate indifference to racial name-calling among students may support a claim of race discrimination in violation of the Constitution.  See Gant ex rel. Gant v. Wallingford Bd. of Educ., 195 F.3d 134, 141 (2d Cir. 1999) (indifference to even "a few instances of student-on-student racial name-calling" would present a "significant question" on summary judgment).  Undoubtedly, the same conduct, racial name-calling, may support a constitutional claim where it is allegedly done by the teacher rather than the students.  "A sense of inferiority affects the motivation of a child to learn" and may deprive African American students of the educational benefits they would otherwise receive.  Brown v. Bd. of Ed. of Topeka, Shawnee Cty., Kan., 347 U.S. 483, 494, (1954), supplemented sub nom. Brown v. Bd. of Educ. of Topeka, Kan., 349 U.S. 294 (1955).  Similarly, a student who faces racial, public denigration by the teacher in the classroom may reasonably be left with a sense of inferiority relative to her classmates.  Doe claims as much.  See Doe Decl. ¶¶ 34-36.  Such denigration may deprive a student of equal access to educational opportunities.  Accordingly, the Court declines to preclude, as a matter of law, an equal protection claim based upon a teacher's alleged verbal harassment of an eighth grader.

Carnine also contends that plaintiff has failed to present evidence of intent to discriminate.  Carnine cites his own declaration and the undisputed fact that he has never received a complaint from a parent or student that he discriminated against a student of African-American ancestry as an evidentiary basis for summary judgment.  However, there is a material issue of disputed fact.

Plaintiff contends that she personally observed Carnine treating her differently than the other members of her, principally white, class.  She contends that he was rude to her,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**       **'O'**

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | February 27, 2017 |
|----------|--------------------------|------|-------------------|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. | | |

threw a note at her, repeatedly asked why she was in his class, looked distinctively at her when he said that Michael Brown got what he deserved, publicly blamed her for any delays after she asked for more time before an exam, and singled her out while saying "if you want to know why Abraham Lincoln was disliked, it was because he was a 'N-I-G-G-E-R lover." According to Doe's testimony, Carnine then leaned in very close to her and said, "Isn't that right [Jane]?" Doe Depo. 75:1-9. At this stage, plaintiff need only present circumstantial evidence that Carnine intentionally discriminated against her based upon her race such that there is a material issue of disputed fact. The foregoing is sufficient circumstantial evidence of Carnine's intent.

Lastly, Carnine again asserts his entitlement to qualified immunity. Carnine's focus is upon whether he has a right to use a racial epithet as part of a class about racism in the South. However, as already discussed, the question of qualified immunity is whether an official's conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009). A student's right not to face racial discrimination in public education is clearly-established, as is a student's right not to face racial harassment at school. See Flores v. Morgan Hill Unified Sch. Dist., 324 F.3d 1130, 1135 (9th Cir. 2003) (school administrators have an equal protection obligation to prevent and respond to harassment at school); DiStiso v. Cook, 691 F.3d 226, 240 (2d Cir. 2012) (student's right to be free of racial harassment has been "clearly-established" since Gant, 195 F.3d 134). As already discussed, viewing the evidence in the light most favorable to plaintiff, Carnine is not entitled to qualified immunity.

Carnine's motion for summary judgment with respect to plaintiff's fifth claim is **DENIED**.

### b.    Against Iannucci and Perdigao

In response to plaintiff's fifth claim, Iannucci and Perdigao reiterate many of the same arguments already discussed at length above. They contend, for instance, that plaintiff cannot demonstrate deliberate indifference to peer harassment or that their

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   **'O'**

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | February 27, 2017 |
|---|---|---|---|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. | | |

remedial efforts were clearly unreasonable.  The Court rejects the foregoing argument for the reasons already discussed.[16]

Iannucci and Perdigao also contend that there is no evidence of racially discriminatory intent.  However, the Court has already concluded there are material issues of disputed fact as to whether or not Iannucci and Perdigao retaliated against plaintiff for filing the State Case.  Relatedly, therefore, there is a material issue of

---

[16] During oral argument, the LAUSD defendants pressed the argument in their moving papers that "harsh or abusive language is not enough to establish" a violation of the Equal Protection Clause.  Reply at 20 (citing Fennell v. Marion Indep. Sch. Dist., 804 F.3d 398, 415 (5th Cir. 2015)).  The LAUSD defendants rely upon Fennell for their contention that *merely verbal* harassment cannot violate a student's right to equal protection.  However, Fennell is unpersuasive authority here because it is easily distinguished and did not purport to establish a rule regarding verbal harassment.  In Fennell, the Fifth Circuit was faced with a single statement by a school's athletic director.  During a conversation with a student about the school's hair-color policy, the athletic director had said, "I know how much you people spend on your ethnic hair styles."  Id. at 404.  The Fifth Circuit held that such a comment could not, standing alone, constitute an equal protection violation unless it somehow deprived "the victim of established rights" or was coupled with "harassment."  Id. at 415.  The lone comment had not stopped plaintiff from equally participating in athletics or in school and the hair-color policy had been consistently applied to students of all races.  Id.

In contrast, here, plaintiff's equal protection claim is not premised upon a single racially insensitive statement by an administrator that was of no consequence to her education or other established rights.  Plaintiff offers evidence of racially charged harassment.  Although the boundary between a racially insensitive comment and verbal "harassment" is somewhat indistinct, it is sufficient to note that Carnine's multiple statements and the alleged chants by plaintiff's peers are of a different kind than the athletic director's comment in Fennell.  Viewed in the light most favorable to plaintiff, the evidence in this case presents a very different situation than was present in Fennel.  Furthermore, in contrast to the statement in Fennell, the verbal harassment in this case is intertwined with plaintiff's right to equal access to the classroom and plaintiff's established right to attend a school where administrators are not deliberately indifferent to a racially hostile environment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      **'O'**

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | February 27, 2017 |
|---|---|---|---|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. | | |

disputed fact as to whether Iannucci and Perdigao retaliated against plaintiff for complaining about discrimination.  It is undisputed that the State Case alleged racial discrimination.  If defendants retaliated against plaintiff for the State Case, then that retaliation could support a claim for violation of plaintiff's right to equal protection.  See Jackson, 544 U.S. at 173-74 (retaliation is "a form of 'discrimination' because the complainant is subjected to differential treatment").  Furthermore, plaintiff presents evidence that she was singled out because of her race.  If Iannucci and Perdigao truly observed what plaintiff contends they observed, and did nothing to discipline students or put a swift end to the pervasive harassment, then there is, at least, a material issue of disputed fact as to whether they were deliberately indifferent to racial discrimination against plaintiff.

Iannucci and Perdigao's motion for summary judgment as to plaintiff's fifth claim is **DENIED**.

The Court is mindful that most of the remaining material issues of disputed fact arise from conflicts between plaintiff's testimony and the testimony and declarations of all of her teachers and Paul Revere staff.  However, the Court "may not weigh credibility in summary judgment proceedings."  Hernandez v. Polanco Enterprises, Inc., 19 F. Supp. 3d 918, 935 (N.D. Cal. 2013); see SEC v. Koracorp Indus., Inc., 575 F.2d 692, 699 (9th Cir. 1978) ("The courts have long recognized that summary judgment is singularly inappropriate where credibility is at issue").  If plaintiff's testimony is credited, she may prove all of her claims.  Accordingly, this matter is inappropriate for disposition on a motion for summary judgment.

## V.    CONCLUSION

Defendants' motions for summary judgment are hereby **DENIED**.

IT IS SO ORDERED.

|  | 00 | 23 |
|---|---|---|
| Initials of Preparer | | CMJ |