| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | April 24, 2017 |
|---|---|---|---|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. | | |

Present: The Honorable    CHRISTINA A. SNYDER

| Catherine Jeang | Laura Elias | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:          Attorneys Present for Defendants:

Jonathan Nielsen                   Lucien Schmit, III

Terrence Jones                 Drew Antablin/Andrea Bruce

**Proceedings:**    LAUSD'S MOTIONS IN LIMINE (Filed April 3, 2017, Dkt. Nos. 103-110)

CARNINE'S MOTIONS IN LIMINE (Filed April 3, 2017, Dkt. Nos. 112-117)

## I.    INTRODUCTION

On January 14, 2016, plaintiff Jane Doe, a minor, by and through her parental Guardian Ad Litem, John Doe (collectively, "plaintiff"), filed the instant action against defendants: the Los Angeles Unified School District ("LAUSD"); Paul Revere Middle School and Magnet Center ("Paul Revere"); Steven Carnine ("Carnine"), a former teacher at Paul Revere; Thomas Iannucci ("Iannucci"), the assistant principal of Paul Revere; Christopher Perdigao ("Perdigao"), the principal of Paul Revere; and Michelle King ("King"), the superintendent of LAUSD (collectively, "defendants"). Dkt. 1. On March 17, 2016, all of the defendants, with the exception of Carnine, filed a motion to dismiss portions of plaintiff's complaint. Dkt. 38. On May 16, 2016, the Court granted in part and denied in part defendants' motion. Dkt. 47

On June 14, 2016, plaintiff filed the operative First Amended Complaint ("FAC").[1] Dkt. 50. In the FAC, plaintiff asserts claims against Paul Revere and LAUSD for: (1) Violation of Title VI of the Civil Rights Act, 42 U.S.C. § 2000d—Hostile Racial Educational Environment; (2) Violation of Title VI of the Civil Rights Act, 42 U.S.C. §

---

[1] The FAC no longer lists King as a defendant.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | April 24, 2017 |
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. | | |

2000d—Intentional Discrimination on the Basis of Race; and (3) Violation of Title VI of the Civil Rights Act, 42 U.S.C. § 2000d—Intentional Discrimination on the Basis of Race by Failure to Provide Adequate Sensitivity Training. Plaintiff also asserts two claims against the individual defendants, Carnine, Perdigao, and Iannucci: (4) Violation of 42 U.S.C. § 1983—Freedom of Speech; and (5) Violation of 42 U.S.C. § 1983—Equal Protection. In brief, plaintiff alleges that Carnine, a teacher at plaintiff's former middle school, Paul Revere, made racially offensive comments to her during class. Plaintiff alleges that the remaining defendants failed to take adequate steps to protect plaintiff from the hostile educational environment that erupted after she complained about Carnine's statements.

On August 8, 2016, the Court granted defendants' motion to dismiss plaintiff's third claim for relief. Dkt. 65.

On December 28, 2016, Carnine filed a motion for summary judgment with respect to the two claims against him. Dkt. 76. On December 29, 2016, LAUSD, Paul Revere, Iannucci, and Perdigao filed a motion for summary judgment on all of plaintiff's claims.[2] Dkt. 78. On February 27, 2017, the Court denied both motions for summary judgment. Dkt. 91.

On April 3, 2017, the LAUSD defendants filed eight motions in limine. Dkts. 103-110. Carnine filed five motions in limine, dkts. 112-116, and a notice of joinder in the first, fourth, and seventh motions in limine filed by the LAUSD defendants, dkt. 117. Plaintiff did not file any motions in limine.

On April 10, 2017, plaintiff filed a notice of non-opposition to the LAUSD defendants' first motion in limine, dkt. 128, and to Carnine's first motion in limine, dkt. 137. On the same day, plaintiff filed an opposition to each of defendants' other motions in limine. Dkts. 129-134, 138-141, 143. On April 10, 2017, the LAUSD defendants also filed an opposition to Carnine's fifth motion in limine. Dkt. 142.

Having carefully considered the parties' arguments, the Court finds and concludes as follows.

---

[2] Carnine no longer works for LAUSD and has separate counsel in this action. For purposes of this order, the Court refers to all of the defendants except Carnine as the "LAUSD defendants."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL** **'O'**

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | April 24, 2017 |
|----------|--------------------------|------|----------------|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. | | |

## II.  BACKGROUND

Plaintiff is an African American student who was formerly enrolled at Paul Revere Middle School.[3]  The events giving rise to plaintiff's claims for relief took place during the second semester of Jane Doe's eighth grade year at Paul Revere.

### A.  Carnine's History Class

At the beginning of the semester in January 2015, Doe was transferred into an Honors History class taught by Carnine.  Although defendants dispute her allegations, Doe claims that Carnine was rude to her when she arrived and treated her differently from other students.  Doe Decl. ¶¶ 13-14.

On the first Friday of the semester, January 16, 2015, the Friday before the Martin Luther King holiday, Carnine led a discussion about stereotypes.  During his deposition, Carnine testified that a student said "[a]ll Jewish people are rich," and another said, "blacks are good at sports."  Carnine Depo. 84:9-19.  Carnine recalls discussing a stereotype that Hispanic and African American students are "poor and don't perform well," id. 85:23-24, but does not recall all of the stereotypes discussed.  Doe recalls a student saying that African Americans are sometimes stereotyped as being athletic and not being smart.  In response, plaintiff remembers Carnine saying "yes, that is a good example . . . most black people are not smart; they're just good athletes."  Doe Depo. 67:2-4.  According to plaintiff, Carnine never said he did not believe in the foregoing stereotypes.  Doe Decl. ¶ 22.

At some point during the discussion, Carnine mentioned Michael Brown.[4]  According to Doe, Carnine said that his own view of the situation in Ferguson, Missouri, was that "Michael Brown was a thug who got what he deserved."  Doe Decl. ¶ 21; Doe Depo. 67:20-68:6.  Doe recalls Carnine continuing, "I know that if I see two black people

---

[3] The following background is drawn from the parties' submissions in relation to the two summary judgment motions.  Citations refer to exhibits, declarations, and depositions offered in support of and opposition to the summary judgment motions.  See Dkts. 76-79, 83-84, 86-87.

[4] Referring to the unarmed African American man shot and killed by a police officer in Ferguson, Missouri in August 2014.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES – GENERAL     'O'

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | April 24, 2017 |
|---|---|---|---|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. | | |

walking behind me at night, I'm immediately going to get scared and think they're either going to hurt me or rob me." Doe Depo. 68:4-6. Carnine recalls telling the class that "if Dr. Martin Luther King was living today, he would be involved in issues like the Sanford [sic] or Staten Island or Ferguson,"[5] but does not recall specifically what he explained. Carnine Depo 97:3-6. Doe was very upset by Carnine's comments and relayed them to her parents that evening. Doe claims that she was worried and scared about returning to Carnine's class.

On January 28, 2015, after missing a few days of school, plaintiff claims that Carnine treated her rudely.

On January 29, 2015, Doe attended Carnine's class again. The parties dispute what exactly was said during the January 29 class, its tone, and the context in which it occurred. Doe testified during her deposition that the students were doing "book work" during the class period, in which they would silently work in their textbooks. Doe Decl. ¶ 33. According to plaintiff, near the beginning of class:

> [Carnine] said that 'If you want to know why Abraham Lincoln was hated as a president' – he then leaned into me and he said that 'He was an N-I-G-G-E-R lover,' and he said, 'Isn't that right, [Jane Doe]?' And he looked at me, and he said that to me.

Doe Depo. 75:1-9. Doe further testified that:

> [a]fter that it was – it was dead silence . . . I just wanted to leave the classroom, but I was – I didn't want to get in trouble, and I was just really, really scared . . . Because he was just really close to me and leaned into me . . . he was really close. I could smell his breath, and then I was really nervous.

Id. 78:3-8. Carnine testified during his deposition that he said:

---

[5] It appears that Carnine was referring to the deaths of Trayvon Martin, in Sanford, Florida; Eric Garner, in Staten Island, New York; and Michael Brown, in Ferguson, Missouri.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | April 24, 2017 |
|----------|--------------------------|------|----------------|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. |

Excuse the vernacular of that time, because it's an – you know, it's a word that shouldn't be used, you know, in – except I'm using it to bring out the anger, the viciousness that the South felt at the defeat of the Civil War.

Carnine Depo. 109:21-25. Carnine claims he said "there was much hatred of Lincoln and that much of that hatred stemmed from the fact that he was viewed by many as a (spelling it out) 'n-i-g-g-e-r lover.'" Carnine Decl. ¶ 29. Carnine claims that he did not direct any comment at plaintiff when he spelled the word and that he did not stare at plaintiff. Id. ¶ 30.

## B.     The School's Investigation and Response to Complaints

While Doe was at school on January 29, 2015, her father called Perdigao to report Carnine's behavior from the previous classes. Plaintiff's father recalls that when he spoke with Perdigao about the stereotypes class, "Perdigao laughed it off and said Mr. Carnine was 'old school' and that we should take a meeting with Mr. Carnine to express our concerns." John Doe Decl. ¶ 21.

The evening of January 29, 2015, plaintiff told her parents and godmother about what had happened in her most recent history class. Plaintiff's father called the school a second time on that same day and scheduled a meeting for the next morning. On January 30, 2015, plaintiff, her parents, and her godmother all met with the vice principal, Iannucci; plaintiff's academic counselor, Joy Kobashi; and Derek Hubbard, an African American staff member at the school. During the meeting, Iannucci told plaintiff's family that he would investigate the concerns they had presented. Paul Revere staff agreed to transfer plaintiff to a new Honors History class. Plaintiff did not return to Carnine's class.

To investigate plaintiff's complaints, Iannucci randomly selected seven students from Carnine's class, interviewed them, and obtained written statements from them. Iannucci planned to meet with Carnine about plaintiff's complaint and Iannucci's subsequent investigation. In early February 2015, before Iannucci met with Carnine, a student with an Individualized Education Plan ("IEP") in one of Carnine's other classes complained that Carnine made a derogatory statement about IEPs and students who had them. Iannucci investigated both complaints, in tandem. Throughout his investigation, Iannucci consulted with District Operations and Staff Relations personnel within the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | April 24, 2017 |
|----------|--------------------------|------|----------------|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. | | |

LAUSD administrative offices – specifically Brenda Olortegui, Staff Relations Director at the Educational Service Center, West ("ESC-West").

On February 12, 2015, Iannucci met with Carnine to discuss the complaints. On or about February 20, 2015, Olortegui prepared and presented a Worksheet for Potential Discipline Discussion to her supervisor and peers in Staff Relations. The consensus of the Staff Relations meeting was to recommend issuing a Notice of Unsatisfactory Act ("NOUA") to Carnine and suspend him for between five and eight days. Staff Relations presented its recommendation to Perdigao and Iannucci, who decided to suspend Carnine for eight days.

On March 18, 2015, plaintiff filed a complaint in Los Angeles County Superior Court, see Case No. BC576028 ("the State Case"), against defendants alleging a Civil Rights Claim based upon California's Unruh Civil Rights Act, see Cal. Civ. Code §§ 52 et seq.[6]

On March 19, 2015, Perdigao sent a letter to Carnine notifying him that a meeting would be held to discuss Perdigao's "tentative intention to issue" an NOUA and "possible suspension." LAUSD Ex. 204. The meeting with Carnine was scheduled to occur on March 24, 2015.

The State Case garnered immediate press attention. LAUSD staff determined that Carnine should be removed from his classroom and reassigned. Accordingly, on Friday, March 20, 2015, Carnine was reassigned from his classroom to the LAUSD ESC-West office. On the same day, Perdigao sent a revised letter to Carnine notifying him that Perdigao's tentative recommendation was for dismissal and suspension without pay. Over the weekend between March 20, 2015, and March 23, 2015, LAUSD administrators reconsidered their position and determined that the original recommendation of suspension had been correct. Olortegui Decl. ¶ 10. On Monday, March 23, 2015, protests occurred on school grounds at Paul Revere, discussed in more detail below.

The disciplinary meeting with Carnine occurred on March 25, 2015, at which time Paul Revere administrators served Carnine with the NOUA and a Notice of Suspension for eight days. On March 26, 2015, Carnine appealed his suspension pursuant to the

---

[6] Plaintiff's complaint in state court was voluntarily dismissed on November 9, 2015.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | April 24, 2017 |
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. |

United Teachers Los Angeles Collective Bargaining Agreement and was returned to his classroom. It is undisputed that it is common for the appeal process to take several months that it sometimes takes over a year.

After Carnine sent notice of his appeal to Olortegui, it was Olortegui's responsibility to schedule an appeal meeting and move the process forward if LAUSD intended to pursue disciplinary action. Olortegui did not schedule an appeal hearing. LAUSD took no further steps to pursue disciplinary action against Carnine. Carnine was neither suspended nor terminated. Carnine's appeal of the suspension was, for practical purposes, the last act in relation to Carnine's discipline and terminated the proceedings. Carnine retired from teaching at some time in 2016.[7]

### C.    The Response to the State Case

In plaintiff's declaration, she states that, after January 29, 2015, she did not receive any updates about the process and progress relating to any potential disciplinary action against Carnine. She continued to see him in the school hallways. Doe Decl. ¶ 47. Plaintiff was distressed by her experiences in Carnine's class and suffered from insomnia as well as crying spells. By March 18, 2015, plaintiff and plaintiff's family had heard nothing about possible disciplinary action against Carnine and filed the State Case.

On March 19, 2015, the day after plaintiff filed the State Case, there were news trucks in front of the school and a crowd of parents when plaintiff was dropped off. According to plaintiff, news broke online that she had filed the State Case. Id. ¶ 51. Plaintiff claims that fellow students began to ask her questions about it. Id. Plaintiff further claims, "I was also told by students that I was 'going to pay for this." Id. On March 20, 2015, Carnine was removed from his classroom and temporarily reassigned to ESC-West.

Over the weekend, March 21 and 22, 2015, news of the State Case spread as well as news of Carnine's reassignment. By the end of the weekend, a "Save Carnine" movement had developed among, primarily, parents and plaintiff's peers. On Sunday, March 22, 2015, Perdigao became aware that there was a group of people planning to organize in defense of Carnine and against the State Case.

---

[7] The present record does not indicate exactly when Carnine retired.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | April 24, 2017 |
|---|---|---|---|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. | | |

The parties agree that, on March 23, 2015, there were protests on Paul Revere school grounds relating to plaintiff's State Case. Before school started on March 23, 2015, a group of at least 50 to 100 people, many of them parents, gathered in front of Paul Revere with signs. When plaintiff arrived at school, cars were honking and people were yelling "Bring Him Back" and "Save Carnine." Doe Decl. ¶ 54. There was also at least one news truck in front of the school.

Plaintiff recalls making her way through the protesters to get to her first class. Plaintiff claims that no administrator or teacher spoke to her or checked on her, but that her peers were asking her lots of questions focused on the State Case. Doe Decl. ¶ 58. The parties contest what transpired over the course of the remainder of the school day on March 23, 2015. In general, plaintiff claims to have, throughout the day, heard students chanting "down with the black girl," and "[Jane Doe] is a B."[8] Id. ¶ 61. She claims students began displaying messages on their shirts with the same two messages she heard chanted. After fourth period, plaintiff had lunch. At the beginning of lunch, there was no chanting or protesting. Plaintiff claims that, "[a]s lunch progressed, there was a huge rally of angry students chanting, 'We want Canine,' [sic] 'Jane is a B,' and 'Down with the black girl.' Mr. Perdigao and Mr. Iannucci were both there. They saw and heard everything but did not interject or stop them. They never checked on me." Id. ¶ 66. Plaintiff finished her lunch in the bathroom and left school soon thereafter. Id.

The parties agree that at an undetermined time during the school day on March 23, 2015, there was a student walkout and demonstration of approximately 500 students. A large group of students did not go to class and participated in a sit-in in the quad. Iannucci Decl. ¶ 14; Perdigao ¶ 11. The large group of students congregated in the quad initially. Iannucci announced that students participating in the demonstration would be given detention. Perdigao claims, "the crowd was noisy and disruptive, we tried to get these students to go back to class, but it became apparent that would not work, so we moved these students into the school auditorium." Perdigao Decl. ¶ 11. Once in the auditorium, school administrators distributed index cards to students to write questions. Administrators answered questions and told students "their support for Mr. Carnine could not extend to disrespectful or intimidating words or acts directed to any student." Id. After the discussion in the auditorium, most students returned to their classes. A small number remained for a sit-in in the quad. None of the participating students were

---

[8] Plaintiff claims that students were chanting that she was "a 'B- word'." Doe Decl. ¶ 59. It is unclear if students' signs said "is a B" or "is a bitch."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | April 24, 2017 |
|----------|--------------------------|------|----------------|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. | | |

punished in any way. Students who missed class were marked as absent for extracurricular activities rather than being marked as truant.

The parties dispute the tenor of the protests, what Paul Revere administrators knew or should have known about the protests, and how Paul Revere responded to the protests. Numerous school staff and teachers have submitted declarations stating that they did not see signs or shirts referring to plaintiff in disparaging language and that they did not hear disparaging chants on March 23, 2015. The parties also dispute whether a Paul Revere counselor "shadowed" plaintiff during the school day of March 23, 2015, to ensure she was okay. [9]

Plaintiff returned to school on April 7, 2015, after spring break. Paul Revere assigned Edwina Harding to "shadow" plaintiff from the beginning of April until the end of the school year. Plaintiff claims that other students avoided her for the rest of the year. Plaintiff graduated from Paul Revere at the end of the 2015 school year.

## III. PLAINTIFF'S CLAIMS

Plaintiff's claims against Paul Revere and LAUSD are for alleged violations of Title VI of the Civil Rights Act. In pertinent part, Title VI of the Civil Right Act provides that no person:

> shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

42 U.S.C. § 2000d. Plaintiff alleges that Paul Revere and LAUSD violated Title VI in three ways: (1) by being deliberately indifferent to a racially hostile educational environment, (2) by intentionally denying her the benefit of a public education on the basis of her race, and (3) by intentionally retaliating against her for bringing complaints about racial discrimination. The first two theories of liability under Title VI are predicated upon Paul Revere's and LAUSD's alleged failure to appropriately respond to Carnine's classroom conduct and their alleged failure to appropriately respond to and protect plaintiff from racial harassment during the "Save Carnine" protests. The third is predicated upon Paul Revere's and LAUSD's response to the "Save Carnine" protests

---

[9] The parties do not describe what is meant by the term "shadowed" in this context.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | April 24, 2017 |
|----------|--------------------------|------|----------------|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. | | |

and plaintiff's allegation that the school and district permitted racial harassment during the protests as retaliation for her filing of the State Case.

Plaintiff's claims against Iannucci, Perdigao, and Carnine are for violation of plaintiff's First Amendment rights and plaintiff's Fourteenth Amendment right to equal protection of the laws. Her claims against Iannucci and Perdigao are different from her claims against Carnine.

Plaintiff's First Amendment claim against Carnine is that Carnine's conduct on January 29, 2015, was in retaliation for plaintiff's protected speech, namely her complaints about prior history classes with Carnine. Plaintiff alleges that Carnine's conduct in the classroom was also racial harassment in contravention of her Equal Protection rights.

Plaintiff's First Amendment claim against Iannucci and Perdigao is that they intentionally permitted the "Save Carnine" protests on campus in retaliation for her exercise of her First Amendment right to file the State Case. She further alleges that Iannucci and Perdigao permitted the "Save Carnine" protests to proceed in retaliation for her complaining about racial discrimination – an alleged violation of her Equal Protection rights.

## IV.  LAUSD'S AND CARNINE'S UNOPPOSED MOTIONS IN LIMINE

The LAUSD defendants' first motion in limine seeks an order excluding:

> all evidence, references to evidence, testimony, or argument relating to settlement discussions for the purpose of proving or disproving the validity or amount of a disputed claim or impeaching by a prior inconsistent statement or a contradiction; and requiring an offer of proof at sidebar or outside jury's presence before introducing proffering or referring to such evidence for any other purpose.

Dkt. 103 at 2. Carnine has joined in the LAUSD defendants' first motion in limine. Dkt. 117. Plaintiff has filed a notice of non-opposition. Dkt. 128. Accordingly, the LAUSD defendants' first motion in limine is **GRANTED**.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES – GENERAL  'O'

| Case No. | 2:16-cv-00305-CAS (JEMx) | | Date | April 24, 2017 |
|----------|--------------------------|---|------|----------------|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. | | | |

Carnine's first motion in limine seeks to exclude evidence relating to six prior incidents of alleged misconduct and allegations against Carnine. Dkt. 112. Carnine avers that evidence relating to these prior incidents is inadmissible character evidence. The LAUSD defendants have not filed any opposition. Plaintiff has filed a statement of non-opposition in which plaintiff explains that plaintiff has "no intention of introducing Carnine's prior bad acts as evidence of his bad character . . . However, as Carnine suggests in his motion, should he 'open the door' by attempting to bolster his character" then plaintiff may seek to introduce evidence challenging Carnine's statements. Dkt. 137. Accordingly, Carnine's first motion in limine is also **GRANTED** without prejudice.

## V.     LAUSD'S SECOND MOTION IN LIMINE

The LAUSD defendants' second motion in limine seeks an order excluding:

> any and all evidence, references to evidence, testimony, or argument relating to testimony offered by Revere students (other than Plaintiff) asserting that any Revere students directed racial slurs, insults, or other racially hostile or insensitive statements at any other Revere students [other than Plaintiff].

Dkt. 104 at 2. The LAUSD defendants argue that any "race-based insults, hostility, or insensitivity" directed at students other than Jane Doe and without defendants' knowledge should be excluded as either irrelevant (Rules 401 & 402) or unfairly prejudicial (Rule 403). Id. at 3.

Plaintiff does not dispute that defendants can only be liable for student-on-student harassment if they had *actual knowledge* of harassment, "so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the education opportunities or benefits provided by the school." Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 642 (1999). Plaintiff must show that defendants knew of and were deliberately indifferent to harassment over which they could have and refused to exert control. Id.; see also Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 740 (9th Cir. 2000) (acts of student-on-student harassment could not support Title IX claim where school only learned of them after school year ended). Thus, plaintiff will only be permitted to offer evidence of racially-charged, student-on-student harassment if she can also show defendants were aware of the harassment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**   **'O'**

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | April 24, 2017 |
|----------|--------------------------|------|----------------|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. | | |

Plaintiff avers that she should nonetheless be able to offer the accounts of Paul Revere students "who heard the racially derogatory comments, chants, and insults directed toward Plaintiff, and saw school officials do nothing to stop it." Dkt. 129. The Court agrees. Plaintiff will be permitted to offer testimony that defendants knew of specific acts of harassment targeting plaintiff.

The only remaining question is whether plaintiff may offer evidence that defendants were aware of race-based, student-on-student harassment directed at students other than Jane Doe. Such evidence may be circumstantial evidence of a racially hostile environment at the school and defendants' knowledge of a racially hostile environment at Paul Revere. "Many, but not all, courts have endorsed this theory of notice . . . that 'actual knowledge of discrimination' can take the form of knowledge about the alleged harasser's conduct toward others which indicates some degree of risk that the harasser would subject the plaintiff to similar treatment." Brodeur v. Claremont Sch. Dist., 626 F. Supp. 2d 195, 208 (D.N.H. 2009) (collecting cases). Although the Ninth Circuit does not appear to have considered this issue, at least one court in this circuit has concluded that evidence showing defendants were aware of harassment against other students is relevant to show defendants' knowledge, and indifference to, an environment that violates students' rights. J.K. v. Arizona Bd. of Regents, No. CV06-916-PHX-MHM, 2008 WL 4446712, at *14 (D. Ariz. Sept. 30, 2008).

No party has indicated that they intend to offer evidence of this kind except insofar as it relates to the LAUSD defendants' sixth motion in limine, discussed below. Plaintiff *will not* be permitted to offer evidence of student-on-student harassment targeting other students unless plaintiff can show that defendants were aware of it. However, plaintiff *will* be permitted to offer evidence that defendants knew of student-on-student harassment targeting her. In all other respects, the Court reserves ruling on the LAUSD defendants' second motion in limine.

## VI. LAUSD'S THIRD MOTION IN LIMINE

The LAUSD defendants' third motion in limine is substantially the same as their second insofar as it seeks to exclude evidence of racial slurs directed at students other than plaintiff. Whereas the second motion in limine seeks to exclude evidence of harassment by students targeting students, this motion seeks to exclude evidence that "any Revere teachers and staff (other than defendants)" directed harassment at students other than plaintiff.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL** **'O'**

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | April 24, 2017 |
|----------|--------------------------|------|----------------|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. | | |

Because defendants cannot be liable for harassment by Paul Revere staff unless a school district official had "actual notice" of the harassment, see Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 275 (1998) (rejecting the principle of respondeat superior in the context of teacher harassment under Title IX), the same principles govern the LAUSD defendants' second and third motions in limine.

Plaintiff avers that she should be permitted to offer evidence that students "saw school officials do nothing to stop" the "Save Carnine" protests. Dkt. 130 at 6. The Court agrees. However, plaintiff will not be permitted to offer evidence of racial-slurs by Paul Revere staff if plaintiff cannot show defendants' were aware of the conduct at issue. In all other respects, the Court reserves ruling on the LAUSD defendants third motion in limine.

## VII. LAUSD'S AND CARNINE'S FOURTH MOTION IN LIMINE

On February 8, 2017, plaintiff disclosed an expert report by Dr. Neal Lester. Dkt. 85. Lester is a Professor of English at Arizona State University with specialties in African American literature and cultural studies. Id. at 3. Lester is a scholar who has written and lectured extensively on the use of the "Nword" in educational environments. Id. Lester's report discloses numerous opinions about this case. For example, Lester offers his opinion that "[t]he ['Save Carnine'] protest is yet another instance of creating an unsafe learning environment for Jane Doe who is exercising her civil rights to have these concerns investigated fairly and without prejudice," id. at 10, and that "[t]he school's handling of the Carnine/Jane Doe situation does not seem geared towards the best interests of Jane Doe or her family," id. at 13. Lester's report discloses that his opinions are based, in part, upon his own "similar childhood memories about encounters with race in [his] elementary school in the Deep South, [and] also in a predominantly white high school." Id. at 6.

The LAUSD defendants' fourth motion in limine, in which Carnine joins, is substantially similar to Carnine's own fourth motion in limine. Both motions in limine seek to exclude any opinion testimony by Lester that is based upon Lester's own, personal experiences as an African American student in the Deep South. Although neither Carnine nor the LAUSD defendants cite Daubert or fully discuss the application of Daubert to Lester's opinions, defendants' motions are in the nature of a partial Daubert motion. Defendants argue that Lester should not be permitted to testify based upon his

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | April 24, 2017 |
|----------|--------------------------|------|----------------|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. | | |

own purportedly analogous experience as an African American student in predominantly white schools in the past.

At the time defendants filed their motions in limine, they had yet to take the deposition of Lester. The instant motions are predicated upon Lester's report, standing alone. Carnine's motion indicates that defendants subpoenaed Lester for a deposition on April 17, 2017, in Arizona. To date, nothing further has been filed in relation to Lester, but defendants anticipate filing supplemental briefing about the admissibility of Lester's testimony. Accordingly, the Court defers any final decision as to whether, and about what, Lester may testify until after the parties have briefed any other <u>Daubert</u> challenges to Lester's opinions.

## VIII. LAUSD'S FIFTH MOTION IN LIMINE

Plaintiff filed the State Case on March 19, 2015. The next day, Carnine was transferred from his classroom at Paul Revere to an LAUSD administrative office. Over the weekend after Carnine's removal from the classroom on Friday, March 20, 2015, a group of people who were aware of Carnine's removal began organizing on Facebook. Both Perdigao and Iannucci have acknowledged that, as of Sunday March 22, 2015, they had some undetermined knowledge that a "Save Carnine" group was organizing and might disrupt school on March 23, 2015. Dkt. 79, Iannucci Decl. ¶ 13; Perdigao Decl. ¶ 10. At least one LAUSD staff member testified during their deposition that the "administrative team" discussed the existence of a "Save Carnine" Facebook page and that a Paul Revere teacher might have been participating in the conversation on Facebook about plaintiff and Carnine. Dkt. 78-13, Blakley Graham Coe Depo. 180:23-181:24.

The LAUSD defendants' fifth motion in limine seeks an order excluding:

> testimony characterizing or stating the contents of online messages posted
> on social media websites or other online locations, without producing,
> identifying and authenticating the messages referred to.

Dkt. 107 at 2. The LAUSD defendants do not direct the Court to any specific evidence they anticipate being offered improperly. Instead, the LAUSD defendants offer the following hypothetical and request:

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES – GENERAL    'O'

| Case No. | 2:16-cv-00305-CAS (JEMx) | | Date | April 24, 2017 |
|---|---|---|---|---|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. | | | |

[s]uppose that someone identified as brentwoodteacher2532@aol.com posted an online message stating 'Karma is a bitch and so is Jane Doe'; and Plaintiff (or her mother, father or godmother), with that post in mind, testifies: 'A teacher at Revere posted a death threat against me or my family.' . . . The Court should exclude testimony characterizing or stating the contents of online messages posted on social media websites or other online locations, without producing, identifying and authenticating the messages referred to. In the hypothetical given above, without seeing the real post, we would never know that the testimony contained inadmissible opinions of a lay witness: 'Karma is a bitch' = death threat; and 'brentwoodteacher 2532' = real teacher currently working at Revere.

Id. at 4.

As already discussed, plaintiff will be permitted to offer evidence tending to show that defendants were aware of a racially hostile educational environment and/or the risk of serious racial-harassment on campus during the week of March 23, 2015. Insofar as plaintiff can show that defendants were aware of the statements being made online before and during the relevant time period, those statements are relevant to show the adequacy of defendants' response in light of what they knew. Accordingly, plaintiff will be permitted to offer evidence of online remarks by students, parents, and staff – provided plaintiff appropriately authenticates any such posts and complies with the rules of evidence.

During oral argument, LAUSD's counsel reiterated a concern that witnesses not be allowed to refer to statements made online without offering any authenticated copy of the online statements themselves. The Court agrees that witnesses will not be permitted to testify to the substance of online statements without authenticated evidence showing what

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | April 24, 2017 |
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. | | |

the statements were.[10]  In accordance with the foregoing, the LAUSD defendants' fifth motion in limine is **GRANTED**.[11]

## IX.    LAUSD'S SIXTH MOTION IN LIMINE

During his deposition, Derek Hubbard, an administrator at Paul Revere's "Magnet Center,"[12] described an incident involving two students other than plaintiff:

> [A.] There were two students. And there was a Caucasian student and an African-American student. And the Caucasian student called the African-American student the N-word.
> Q. And when -- when was this?
> A. This -- I would say, maybe the following school year.
> . . .
> [Q] This was after the events of March 2015?
> A. I believe so, yes.
> Q. Could you describe what -- what your investigation, and the aftermath of that, looked like?
> A. Oh, I spoke with the students, and I called the students' parents. And the – the student felt as though they were using the term in a friendly way, that was not -- and the student who -- didn't perceive it as that.  And so, basically, I just explained to the student that it wasn't perceived as that; and that that – that word shouldn't be used; and, you know, the context – 'I understand you weren't trying to be malicious, but it wasn't perceived in the way you thought it was perceived.'

---

[10] Plaintiff avers that she can and will offer an authenticated copy of any online posts she intends to use at trial.

[11] The Court reserves ruling regarding the admissibility of specific statements made online and whether plaintiff has adequately authenticated specific pieces of evidence.

[12] Although neither party explains the difference in detail, the parties appear to agree that the Paul Revere Middle School campus contains two components, a "Magnet Center" and the "Charter School," each of which serves different students.  Plaintiff was a student at the Charter School component.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | April 24, 2017 |
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. |

Q. Did you escalate that situation up to the dean of students?
A. I did inform them, and they were aware of the situation, but the farthest
we took it was to call the parents.

Dkt. 133 Ex. A.

The LAUSD defendants' sixth motion in limine seeks to exclude:

testimony or other evidence regarding claims of discrimination made to
Derek Hubbard as Magnet Coordinator and determined to be meritless by
Mr. Hubbard.

Dkt. 108 at 2. The LAUSD defendants argue that evidence of this incident after plaintiff
had graduated from Paul Revere is not relevant to plaintiff's claims and risks unfair
prejudice to the defendants. The Court agrees.

Plaintiff argues that this complaint, made the following academic year, is "direct
and circumstantial evidence" of a hostile environment "toward black students, and
[plaintiff] in particular." Id. at 5.

Statements made after plaintiff graduated are not relevant to plaintiff's hostile
educational environment claim. Cf. Beaubrun v. Thomas Jefferson Univ., 578 F. Supp.
2d 777, 784 (E.D. Pa. 2008) (comments made after plaintiff's termination are not relevant
to hostile environment claims); Gilson v. Pennsylvania State Police, 175 F. Supp. 3d 528,
564 (W.D. Pa. 2016), aff'd, No. 16-2144, 2017 WL 280717 (3d Cir. Jan. 23, 2017)
(evidence of post-termination harassment is irrelevant to hostile work environment
claims). Contrary to plaintiff's conclusory assertion, Hubbard's deposition testimony
about a separate incident in which the "N word" was used at Paul Revere does not
demonstrate that defendants were deliberately indifferent to a racially hostile
environment in March 2015, nor does it show that defendants intentionally retaliated
against her for filing the State Case. This subsequent complaint to Hubbard about an
interpersonal dispute between two students bears little resemblance to plaintiff's
allegations of intentional discrimination by a teacher or to the "Save Carnine" protests,
nor does it appear to have involved anyone associated with the "Save Carnine" protests.
Evidence relating to this incident after plaintiff graduated is therefore properly excluded
as irrelevant.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | April 24, 2017 |
|----------|--------------------------|------|----------------|
| Title    | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. | | |

The evidence at issue here is also properly excluded pursuant to Rule 403. If plaintiff were permitted to offer evidence of this separate complaint about the use of the "N word" between two unrelated students, defendants should be permitted to explain the full background to the complaint itself, the context in which the complaint was brought to defendants' attention (if at all), and defendants' remedial measures in reaction to the incident. The evidence will require an additional mini-trial about a complaint that did not involve plaintiff and occurred after plaintiff had graduated. Such evidence risks substantial jury confusion of the issues in this case and will not be relevant to plaintiff's claims. Accordingly, the LAUSD defendants' sixth motion in limine is **GRANTED**.

## X.    LAUSD'S SEVENTH MOTION IN LIMINE

In support of plaintiff's opposition to the defendants' motions for summary judgment, plaintiff submitted three anonymous declarations purporting to be from plaintiff's peers at Paul Revere Middle School. Plaintiff claimed that the anonymous declarations had been prepared and signed by other students who observed the "Save Carnine" protests. The Court sustained defendants' objections to the consideration of declarations submitted to the Court anonymously and declined to consider the three declarations in relation to the summary judgment proceedings. The LAUSD defendants' seventh motion in limine seeks to prevent the witnesses whose declarations were anonymized during summary judgment proceedings from testifying at trial. Carnine has joined in the LAUSD defendants' seventh motion in limine.

Plaintiff responds that plaintiff disclosed the identities of the three student-witnesses to defendants in June 2016, as part of plaintiff's initial Rule 26 disclosures.[13] Dkt. 134 at 4. Plaintiff further asserts that the witnesses' identities were also disclosed in plaintiff's supplemental Rule 26 disclosure in December 2016. Id. On April 3, 2017, plaintiff filed a witness list for trial that listed these witnesses as:

8. Paul Revere Student #1 . . . Former Paul Revere Student

9. Paul Revere Student #2 . . . Former Paul Revere Student

---

[13] Plaintiff has offered a copy of her initial disclosures for the Court's consideration with the three students' full names redacted. Plaintiff has included the witnesses' initials: F.S., K.B., and T.S.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | April 24, 2017 |
|----------|--------------------------|------|----------------|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. | | |

10. Paul Revere Student #3 . . . Former Paul Revere Student

Dkt. 124. Plaintiff's counsel simultaneously emailed the witnesses' full names to counsel for the defendants. Dkt. 134 Ex. D.

Plaintiff avers that these witnesses should be permitted to testify because defendants have long known their full names and that they were among plaintiff's potential witnesses. The Court agrees.

Plaintiff made the necessary Rule 26(a)(1) disclosures. Plaintiff's email to defendants included the necessary pretrial disclosure of these witnesses' identities as required by Rule 26(a)(3). Pursuant to Federal Rule of Civil Procedure 5.2, plaintiff may refer to witnesses who are minors by their initials in any documents that are publicly filed.[14] Accordingly, there is no reason these witnesses should be prevented from testifying.[15] Plaintiff will be permitted to call F.S., K.B., and T.S. as witnesses at trial insofar as they have relevant, non-cumulative testimony to offer. The LAUSD defendants' seventh motion in limine is **DENIED**.

## XI. LAUSD'S EIGHTH MOTION IN LIMINE

On March 24, 2015, Revere staff and LAUSD officials appear to have held a public meeting with parents and other members of the community to discuss the "Save Carnine" protests and State Case in an open forum. Plaintiff's mother and godmother evidently attended the meeting and recorded all or part of the meeting. Plaintiff intends

---

[14] If plaintiff contends that these witnesses' identities should be further protected or that certain procedures should be followed at trial to protect these witnesses' identities from public-disclosure, plaintiff shall file a motion for a protective order setting forth plaintiff's request and how plaintiff suggests proceeding and permitting these witnesses to testify.

[15] Plaintiff acknowledges that these witnesses are bound by their sworn declarations and may be subject to impeachment on cross-examination if their testimony differs materially from their prior declarations.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | April 24, 2017 |
|----------|--------------------------|------|----------------|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. | | |

to offer some of these recordings into evidence, including recordings of statements by Paul Revere and LAUSD employees.[16]

The LAUSD defendants argue that some statements in the recordings are "inaudible or poorly audible." The LAUSD defendants' eighth motion in limine seeks to exclude portions of the recordings that are difficult to hear and prevent any witness from offering an opinion about what is said in the inaudible portions of the recordings. [17]

Plaintiff contends the clarity and quality of the recordings simply goes to the evidence's weight, not its admissibility. Plaintiff further contends that defendants will be permitted to cross-examine witnesses about the inaudible portions and make argument to the jury about the reliability of the recordings.

Neither party has submitted the recordings for the Court's review or explained whether the recording can be enhanced or transcribed. Plaintiff is ordered to file a copy of any audio recordings that she intends to offer during trial. Plaintiff's submission shall include a memorandum indicating the identities of those who are speaking, if known to plaintiff, and identify the passages to which the LAUSD defendants' object. The Court reserves ruling on the LAUSD defendants' eighth motion in limine until such time as the Court has been able to review the evidence at issue.

---

[16] Neither party explains the details of the meeting that was recorded, who was in attendance, and who was recorded in the evidence at issue. Defendants' motion states only that plaintiff has a recording of "a March 24, 2015 meeting in the auditorium at Revere." Dkt. 110 at 3. Plaintiff's opposition adds that "school and district officials held," the meeting where plaintiff's mother and godmother "recorded the various statements made by, *inter alia*, Revere and LAUSD officials." Dkt. 143 at 4 (emphasis in original).

[17] It is unclear from the parties' filings if the recording may have been surreptitious. For present purposes, the Court assumes that the recordings would be admissible if they were audible and addresses only the question whether difficult-to-hear portions of the recordings may be admissible.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**      'O'

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | April 24, 2017 |
|---|---|---|---|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. | | |

## XII. CARNINE'S SECOND MOTION IN LIMINE

A deposition of Jane Doe took place on September 13, 2016. Thereafter, on November 1, 2016, plaintiff's counsel sent a letter to defendants with a list of Jane Doe's corrections to testimony. Plaintiff's counsel also sent a copy of the deposition transcript with changes handwritten on the appropriate pages and signed by Jane Doe on October 31, 2016. In December 2016, defendants sent an email to plaintiff's counsel requesting a stipulation to reopen Jane Doe's deposition based upon her changes. Dkt. 113 Ex. 2. The parties agree that plaintiff never responded to the request, nor did defendants seek to compel any further deposition testimony by Jane Doe.

Carnine's second motion in limine seeks:

> to preclude Plaintiff, Plaintiff's counsel and all witnesses, from testifying, questioning witnesses, arguing or otherwise attempting to bring to the attention of the trier of fact . . . [t]hat Plaintiff JANE DOE purportedly made changes or corrections to her deposition testimony (of September 13, 2016) in this action, and reference to the substance of the purported change/corrections.

Dkt. 113 at 2. Carnine argues that plaintiff's deposition corrections failed to comply with the requirements of Federal Rule of Civil Procedure 30(e)(1)(B) and that, therefore, plaintiff should be bound exclusively to her original deposition testimony without reference to any corrections she later made.

Federal Rule of Civil Procedure 30(e) provides:

> (e) Review by the Witness; Changes.
>> (1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:
>>> (A) to review the transcript or recording; and
>>> (B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.
>> (2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | April 24, 2017 |
| --- | --- | --- | --- |
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. | | |

was requested and, if so, must attach any changes the deponent makes
during the 30-day period.

The foregoing rule, "governs review of deposition transcripts and changes thereto."
<u>Lewis v. THe CCPOA Benefit Trust Fund</u>, No. C-08-03228-VRW DMR, 2010 WL
3398521, at *2 (N.D. Cal. Aug. 27, 2010).  Rule 30(e) "permits corrections in 'form or
substance' of deposition testimony under certain circumstances, provided that procedural
requirements are met.  <u>Id.</u>

Carnine argues that Jane Doe's failure to provide a statement with "the reasons for
making" the changes she made should preclude her from correcting her deposition
testimony or mentioning her corrections during trial.  Carnine is incorrect.

Rule 30(e) is not a rule that affects any party's testimony or argument during trial.
Rule 30(e) governs the finality of a deponents answers and the wording in the deposition
transcript.  As the advisory committee notes to the Rule's original adoption make clear,
Rule 30(e) "permit[s] the deponent to require the officer to make changes in the
deposition if the deponent is not satisfied with it."  Fed. R. Civ. P. 30 Advisory
Committee's Notes to the 1937 Adoption.  Nothing in the language of Rule 30(e) requires
the exclusion of any reference to plaintiff's deposition corrections during trial.  In fact,
even where courts have stricken deposition changes, the witnesses are permitted to
explain any discrepancies at trial.  <u>See e.g.</u> <u>Mullins v. Premier Nutrition Corp.</u>, 178 F.
Supp. 3d 867, 903 (N.D. Cal. 2016) ("He may, of course, clarify his response at trial");
<u>Lewis v. THe CCPOA Benefit Trust Fund</u>, No. C-08-03228-VRW DMR, 2010 WL
3398521, at *4 (N.D. Cal. Aug. 27, 2010) (the deponent "will have a full opportunity to
explain his mistaken testimony at summary judgment or at trial").  "[T]here are two
remedies available to attorneys who are faced with a deponent who change his/her
answers after their deposition is complete.  First, counsel can attempt to impeach a
witness at trial based on [the] changes."  <u>Herring v. Teradyne, Inc.</u>, No. CIV. 01CV1835-
L(JFS), 2002 WL 32068318, at *4 (S.D. Cal. Nov. 4, 2002).  Second, counsel may seek
to reopen the deposition.  <u>Id.</u>  Where a deponent makes Rule 30(e) changes to their
deposition testimony, both the original deposition answers and the changes are admissible
at trial.  <u>Usiak v. N.Y. Tank Barge Co.</u>, 299 F.2d 808, 810 (2d Cir. 1962).  Accordingly,
Carnine's evidentiary motion is **DENIED**.

Even if the Court were to construe Carnine's motion as a motion to strike
plaintiff's corrections, it would be without merit.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | April 24, 2017 |
|----------|--------------------------|------|----------------|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. | | |

The Ninth Circuit has held that any Rule 30(e) corrections must be "corrective" not "contradictory" and may be struck under certain circumstances. Hambleton Bros. Lumber Co. v. Balkin Enterprises, Inc., 397 F.3d 1217, 1225 (9th Cir. 2005). Other circuits have reached the same conclusion. Garcia v. Pueblo Country Club, 299 F.3d 1233, 1242 n. 5 (10th Cir.2002) ("The Rule cannot be interpreted to allow one to alter what was said under oath. If that were the case, one could merely answer the questions with no thought at all then return home and plan artful responses. Depositions differ from interrogatories in that regard. A deposition is not a take home examination"); Thorn v. Sundstrand Aerospace Corp., 207 F.3d 383, 389 (7th Cir.2000) ("a change of substance which actually contradicts the transcript is impermissible unless it can plausibly be represented as the correction of an error in transcription"). In Hambleton Bros., upon which Carnine relies, the Ninth Circuit affirmed the trial court's decision to strike "sham" deposition corrections, where the court determined they were submitted "solely to create a material factual dispute" and evade summary judgment. Id.

Some courts have interpreted Hambleton Bros. as requiring a court to strike any deposition corrections that contradict a deponent's original testimony. See Mullins, 178 F. Supp. at 902 ("he cannot use the errata sheet to contradict his original responses"); Teleshuttle Techs. LLC v. Microsoft Corp., No. C04-02927 JW(HRL), 2005 WL 3259992, at *2 (N.D. Cal. Nov. 29, 2005) ("Sometimes, in fact, the 'clarification' outright contradicts his original answer"). Others have permitted corrections if there was a plausible reason for the correction and the change was not particularly relevant to the case, even if the change appeared to be contradictory. See e.g. Shinde v. Nithyananda Found., No. EDCV13363JGBSPX, 2015 WL 12746703, at *6 (C.D. Cal. May 21, 2015) (deponent permitted to change "yes" to "no" where reason was plausible).

Plaintiff's corrections here fall into the latter category. Carnine has not demonstrated that plaintiff's corrections should be stricken. Plaintiff's deposition corrections do not appear to have been a "sham" submitted solely to evade summary judgment. Nor did the corrections assist her in evading summary judgment, which turned principally upon her sworn declaration rather than her deposition testimony. Plaintiff's deposition corrections were timely and submitted well in advance of summary judgment proceedings as well as the close of discovery. Before the instant motion in limine, defendants have never brought a motion to strike plaintiff's corrections.

Rule 30(e) permits changes to the "form *or substance*" of deposition testimony, provided the change is "corrective." Hambleton Bros., 397 F.3d at 1225 (emphasis

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**      **'O'**

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | April 24, 2017 |
|----------|--------------------------|------|----------------|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. | | |

added).  Although Jane Doe made 44 changes to her deposition testimony, none materially contradicted the substance of her original answers.  Most of the corrections related to the timing of events in spring 2015.[18]  Plaintiff has always alleged that the events giving rise to her claims occurred between January 2015 and March 2015.  See generally FAC.  That Jane Doe, a teenage witness, corrected the precise dates of events occurring approximately 18 months before she was deposed hardly converts her deposition corrections into a "sham."

------

[18] Two corrections were typographic in nature:

"DELETED 'Bob' ADDED 'Rob'" and
"DELETED 'wear black' ADDED 'watch your back'."

Dkt. 113 Ex. 1.  Two clarified answers to questions in the form of a negative, for example:

Question: "he might not have, you just don't remember, right?"
Answer: "DELETED 'Yes' ADDED 'Not that I recall'"

Id.  Twelve corrections replaced phrases like "I don't recall" or "I don't remember" with "Not that I recall.  Id.

The remaining 28 corrections all related to plaintiff's recollection and statements about specific dates of events in spring of 2015.  Specifically, plaintiff repeatedly testified that events occurred in April 2015, but corrected her testimony to clarify that the events in question occurred in March 2015.  For example, defense counsel asked Jane Doe if she had any encounters with students that she felt were harassing during the school week from April 13, 2015, to April 17, 2015.  Jane Doe Depo. at 36:14-17.  Jane Doe answered, "Yes" and described her interactions with a group of white students that she claims bullied and harassed her.  Later in her deposition, defense counsel asked whether any protests or demonstrations occurred between April 13, 2015, and April 17, 2015, to which plaintiff answered, "I believe so . . . I can't recall a specific date but they occurred during lunch and sixth period."  Id. at 40:8-14.  Jane Doe's corrections clarified that the foregoing bullying and protests actually occurred during the school week between March 23, 2015, and March 27, 2015, rather than in mid-April 2015.  See generally Dkt. 113 Ex. 1.

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | April 24, 2017 |
|----------|--------------------------|------|----------------|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. |

The purpose of a statement of reasons pursuant to Rule 30(e) is to "permit[] an assessment concerning whether the alterations have a legitimate purpose." Hambleton Bros., 397 F.3d at 1224-25. However, the court in Hambleton Bros. recognized that minor violations of Rule 30(e)'s procedural requirements "might not alone justify excluding the corrections in every case." Id. at 1224. This is such a case. If Carnine doubted whether plaintiff's corrections were made in good faith, he might have sought to compel further deposition testimony or brought a motion to strike the corrections before the eve of trial.

## XIII. CARNINE'S THIRD MOTION IN LIMINE

Carnine's third motion in limine seeks to preclude John Doe, plaintiff's father, from offering inadmissible testimony in general. Carnine argues that there is a substantial risk that John Doe may offer testimony that is either irrelevant, inadmissible hearsay, improper lay witness opinion, outside his personal knowledge, or substantially and unfairly prejudicial. In support of his motion, Carnine directs the Court to prior statements wherein John Doe has offered his own opinions about Carnine's classroom conduct or argued that this case is analogous to various civil rights movements in the past.

Having reviewed John Doe's declaration, the Court agrees that not all of John Doe's statements therein would be admissible at trial if he repeated them verbatim. John Doe will not be permitted to testify as an expert witness or be permitted to offer expert opinions. Nor will John Doe be permitted to offer improper lay witness opinions, testify to facts beyond his personal knowledge, or speculate about defendants' intent and conduct.

Beyond these general statements of the law, the Court reserves further ruling as to the admissibility of John Doe's testimony until trial. Carnine's third motion in limine is **DENIED without prejudice** to renewal in light of any particular testimony by John Doe at trial.

## XIV. CARNINE'S FIFTH MOTION IN LIMINE

Carnine's fifth motion in limine is opposed by both plaintiff and the LAUSD defendants. Carnine's fifth motion in limine seeks to exclude evidence relating to LAUSD officials' reactions, remedial actions, and discipline pursued against Carnine in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | April 24, 2017 |
| --- | --- | --- | --- |
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. | | |

relation to Carnine's classroom conduct in January 2015. Specifically, Carnine seeks to exclude three types of evidence:

(1) evidence that then-LAUSD Superintendent Cortines, when he first heard about Carnine's alleged classroom conduct, wanted Carnine to be dismissed;

(2) evidence relating to LAUSD's Notice of Unsatisfactory Act ("NOUA") and intent to suspend Carnine for his classroom conduct in January 2015; and

(3) evidence relating to the allegation that Carnine made inappropriate comments in February 2015 to a student with an IEP.

The first category of evidence at issue is a third-hand account of Cortines' reaction when he first heard plaintiff's allegations. During her deposition, Olortegui testified:

> Mr. Cortines also spoke with my supervisor in terms what the follow-up or what our understanding of this matter was. And I believe Mr. Cortines' personality is -- at least from my interactions and maybe the district's interaction with him, is pretty abrupt. And I think his initial response was, without having background information or information in terms of how staff relations was supporting the site administrator, said he wanted [Carnine] to be dismissed.
> [Question] Mr. Cortines said that to your boss?
> [Answer] Yes.

Olortegui Depo. at 146:19-147:5. Olortegui then explained that she relayed information from Iannucci to her own boss about the allegations and that her boss relayed the information to Cortines. Thereafter, Cortines wanted to "have a conference call" among the key players to determine what to do. Id. at 147.

The second and third categories of evidence are related to Paul Revere's investigation and decision to attempt to temporarily suspend Carnine for classroom misconduct. Shortly after plaintiff was removed from Carnine's class on January 29, 2015, a student with an IEP in a different class complained about comments by Carnine regarding students with IEPs. Because of the temporal proximity between plaintiff's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**      **'O'**

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | April 24, 2017 |
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. |

complaints and this other student's complaint, LAUSD and Paul Revere dealt with both allegations in a single investigation and issued a single NOUA for both complaints.[19]

Carnine argues that the foregoing evidence is inadmissible against him because it is evidence of subsequent remedial measures that is inadmissible pursuant to Federal Rule of Evidence 407, is inadmissible hearsay evidence, or should be excluded because its probative value is substantially outweighed by the risk of unfair prejudice.

Carnine's argument in relation to Rule 407 is without merit. The purpose of Rule 407 is to exclude evidence of remedial actions "as proof of an admission of fault." Fed. R. Evid. 407 (Advisory Committee Notes). Implicit in Rule 407 is that the Court should not admit *a party's own remedial efforts* as evidence that the same party has admitted or acknowledged fault. See Pau v. Yosemite Park & Curry Co., 928 F.2d 880, 888 (9th Cir. 1991) (a third-party is not inhibited from taking remedial action if such actions are admitted against someone else). In that respect, Rule 407 prohibits plaintiff from offering LAUSD's disciplinary decisions *against* LAUSD as an admission by LAUSD or proof of LAUSD's culpable conduct. Thus, Rule 407 does not preclude admission of evidence of LAUSD's response to Carnine's conduct.

Testimony from any of the LAUSD defendants' witnesses relaying their dissatisfaction with Carnine's conduct is relevant to whether or not the LAUSD defendants intentionally retaliated against plaintiff for complaining or intentionally discriminated against plaintiff in their response to Carnine's conduct. Therefore, evidence relating to LAUSD's actions after plaintiff was removed from Carnine's class is critical to the resolution of plaintiff's claims against the LAUSD defendants. In relation to plaintiff's claims against the LAUSD defendants, both plaintiff and the LAUSD defendants agree that this evidence should be admitted.[20]

---

[19] It is unclear to what extent Carnine was disciplined for his alleged statements about students with IEPs as opposed to his comments in plaintiff's class.

[20] As far as hearsay is concerned, the evidence at issue appears to be offered by the other parties to explain and explore the adequacy of LAUSD's response to the complaints against Carnine – not for the truth of any allegations against Carnine. Furthermore, much of the evidence appears to be, if offered by plaintiff, statements by party opponents.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**       **'O'**

| Case No. | 2:16-cv-00305-CAS (JEMx) | Date | April 24, 2017 |
|----------|--------------------------|------|----------------|
| Title | JANE DOE V. LOS ANGELES UNIFIED SCHOOL DISTRICT ET AL. | | |

Accordingly, the evidence at issue is probative to plaintiff's claims. Insofar as its admission carries any risk of unfair prejudice to Carnine, that risk can be avoided by providing the jury with careful limiting instructions. Carnine's fifth motion in limine is **DENIED without prejudice** to being renewed in relation to specific testimony at trial.

## XV. CONCLUSION

The LAUSD defendants' first, fifth, and sixth motions in limine are **GRANTED**. The LAUSD defendants' seventh motion in limine is **DENIED**. The Court reserves ruling upon the LAUSD defendants' second and third motions in limine until trial. The Court reserves ruling on the LAUSD defendants' fourth motion in limine until such time as the parties have fully briefed the admissibility of Lester's expert opinions or, alternatively, defendants indicate that they will oppose no other portions of Lester's proposed testimony. The Court reserves ruling on the LAUSD defendants' eighth motion in limine until the Court has reviewed the evidence at issue.

Carnine's first motion in limine is **GRANTED**. Carnine's second, third, and fifth motions in limine are **DENIED**. The Court reserves ruling on the LAUSD defendants' fourth motion in limine until such time as the parties have fully briefed the admissibility of Lester's expert opinions or, alternatively, defendants indicate that they will oppose no other portions of Lester's proposed testimony.

IT IS SO ORDERED.

| | 01 | 00 |
|---|---|---|
| Initials of Preparer | | CMJ |